[No. 3266-1.   Division One.   September 7, 1976.]

LAWRENCE RHODES, ET AL, *Appellants*, v. D & D ENTERPRISES, INC., ET AL, *Respondents*.

*Jacob Cohen,* for appellants.

*M. J. Carlson,* for respondents.

FARRIS, J.—On June 12, 1969, Lawrence and Betty Rhodes, husband and wife, signed an earnest money receipt

and agreement wherein they agreed to sell approximately 60 acres of land on Camano Island in Island County, Washington, to Phil B. Duncan and his wife, Lois V. Duncan. The agreement, presented to the Rhodeses by Ann B. Sollid, a licensed real estate broker, and a salesman in her employ, Bill K. Shuping, provided for a selling price of $174,000 with $150,000 net to the Rhodeses. Following execution of the agreement, the Duncans formed D & D Enterprises, Inc., and assigned their interest in the agreement to it. Thereafter, Phil Duncan, accompanied by Bill Shuping, asked an attorney to prepare a real estate contract clause which would entitle the purchaser to a deed release after the down payment and at each subsequent point when the principal had been reduced by $17,400. Based upon these instructions, the attorney drafted the following provision:

> From time to time as purchaser shall have paid increments of ten (10) percent or more of the total principal purchase price, seller agrees to convey to purchaser by statutory warranty deed parcels equivalent to ten (10) percent of the total area of the property being purchased, pursuant to legal descriptions thereof to be provided by purchaser.

The real estate contract was executed on October 15, 1969, and D & D Enterprises began making the required semiannual payments.

On October 4 or 5, 1971, Phil Duncan delivered two deed releases to the Stanwood Branch of the Seattle-First National Bank (which was acting as collection agent for the Rhodeses) for the Rhodeses to sign. An officer of the bank (Ann Sollid's husband) advised Rhodes not to sign the deed releases and suggested that he see an attorney. Thereafter, Rhodes refused to execute the deed releases and D & D did not make the semiannual payment due on October 10, 1971.

The Rhodeses thereafter brought this action in the Snohomish County Superior Court seeking (1) a declaratory judgment construing the previously quoted contract provision and (2) monetary damages against the various defendants. The Duncans and D & D responded by seeking (1)

dismissal of the Rhodeses' complaint and (2) rescission of the contract or, alternatively, damages for its breach. The Sollids responded by seeking dismissal of the Rhodeses' complaint on the ground that it failed to state a claim upon which relief could be granted.

On March 30, 1973, in a document denominated "Decree," the trial court, sitting without a jury, (1) construed the disputed clause of the contract, (2) ordered the Rhodeses to convey approximately 10 percent of the property to D & D, (3) terminated the contract, and (4) denied the Rhodeses' claim for damages against the various defendants. The specific parcel to be conveyed was left to negotiations between the parties with the proviso that a referee was to be appointed in the event that agreement could not be reached. That appointment became necessary and, following further proceedings, in a document denominated "Final Judgment" entered on August 19, 1974, the court directed the Rhodeses to convey a specific portion of the property to D & D. The Rhodeses appeal.

The threshold issue is whether this appeal, or any part of it, must be dismissed for failure to comply with CAROA 33 which precludes appellate jurisdiction unless notice of appeal is filed within 30 days after entry of an appealable order, judgment, or decree. CAROA 33(1); *Kelly v. Schorzman*, 3 Wn. App. 908, 911, 478 P.2d 769 (1970). Here, the notice of appeal filed on September 12, 1974, was within 30 days of the "Final Judgment" entered on August 19, 1974; the question then becomes whether we thereby obtained jurisdiction to review the matters adjudicated in the "Decree" entered on March 30, 1973. The scope of review on appeal is determined by the type of judicial determination appealed from. CAROA 14; *Nestegard v. Investment Exch. Corp.*, 5 Wn. App. 618, 489 P.2d 1142 (1971). CAROA 14 specifies three types of judicial determinations: order, final judgment, and final order. In deciding which of these labels applies to a particular determination, substance controls over form and the court looks to the content of a document rather than its title. *Nestegard v.*

*Investment Exch. Corp.*, *supra* at 623. Here, the "Decree" entered on March 30, 1973, settled all issues except which specific portion of the property was to be conveyed to D & D. It is a final judgment. *See Nestegard v. Investment Exch. Corp.*, *supra* at 623-24. The "Final Judgment" entered on August 19, 1974, is actually the final order. CAROA 14(7) provides that where, as here, an appeal is taken from any final order made after judgment which affects a substantial right that appeal

> shall also bring up for review any previous order in the same action or proceeding which involves the merits and necessarily affects the order appealed from, in case the record sent up on the appeal, or any supplementary record sent up before the hearing thereof, shall show such previous order sufficiently for the purposes of a review thereof.

We are therefore precluded from reviewing the "Decree" entered on March 30, 1973, since it is a final judgment (not a previous order) from which no appeal was timely taken. *See Nestegard v. Investment Exch. Corp.*, *supra* at 625-26.

■ It is argued that the final order entered August 19, 1974, exceeds the trial court's jurisdiction because it affects title to real property in another county in contravention of RCW 4.12.010(1), which provides:

> Actions for the following causes shall be commenced in the county in which the subject of the action, or some part thereof, is situated:
> (1) For the recovery of, for the possession of, for the partition of, for the foreclosure of a mortgage on, or for the determination of all questions affecting the title, or for any injuries to real property.

We disagree. A decree which orders the conveyance of land situated in another county of the state is within the jurisdiction of a court of equity acting in personam. *See Donaldson v. Greenwood*, 40 Wn.2d 238, 250-51, 242 P.2d 1038 (1952).

■ Whether the trial court had jurisdiction of the subject matter of the suit is determined by the nature of the cause of action and the relief sought. *Silver Surprize, Inc.*

*v. Sunshine Mining Co.,* 74 Wn.2d 519, 445 P.2d 334 (1968). If the plaintiff's case confers jurisdiction, the defendant by its answer cannot divest the court of its jurisdiction. *Accord, Silver Surprize, Inc. v. Sunshine Mining Co., supra; see Sheppard v. Coeur d'Alene Lumber Co.,* 62 Wash. 12, 112 P. 932 (1911).

While a court is prevented from ruling on a counterclaim which requests relief in excess of the court's jurisdiction, the order about which the Rhodeses complain escapes that pitfall. It merely compels them to make a conveyance, an action which is within the court's equity jurisdiction.

Affirmed.

SWANSON, J., and JOHNSON, J. Pro Tem., concur.