[No. 7076-0-III.   Division Three.   May 19, 1987.]

*In the Matter of the Marriage of* JOANN MAXFIELD, *Respondent, and* ROBERT MAXFIELD, *Appellant.*

*Dennis W. Clayton* and *Bardelli & Clayton,* for appellant.

*Richard C. Agman,* for respondent.

THOMPSON, J.—Robert Maxfield appeals a judgment entered March 22, 1985, granting Mrs. Maxfield $12,800 on her motion for summary judgment. He also appeals the trial court's denial of his motion to stay and set aside the contempt order and judgment that was the basis for granting Mrs. Maxfield the $12,800. Mrs. Maxfield cross–appeals, contending her motion for contribution for house payments, insurance and tax costs should have been granted. We affirm in part, reverse in part.

The 25–year marriage of Joann and Robert Maxfield ended October 28, 1981, by a decree of dissolution. The decree ordered the family home sold and the completion of

certain necessary repairs. Testimony during trial estimated the cost of completing the repairs, if Mr. Maxfield did the work, at approximately $2,800. The decree failed to specify who was responsible for completion of the repair work.

In July 1982, Mr. Maxfield was served with an order to show cause which referred to willful disobedience of the decree of dissolution for failure to complete the home. However, no further action was taken on this order to show cause.

On May 24, 1983, a second show cause order was served on Mr. Maxfield, requiring him, among other things, to show cause why he should not be required to immediately complete construction of the family home. On the date set for hearing, neither Mr. Maxfield nor his attorney appeared. The affidavit from Mr. Maxfield's attorney states he did not communicate this hearing date to his client. Thereafter, on September 16, 1983, a presentment hearing was held attended by Mr. Maxfield's attorney, but not by Mr. Maxfield. His attorney approved without opposition a finding of contempt and order that Mr. Maxfield should complete the home by October 2. If the work was not completed, Mr. Maxfield was to be fined $100 per day until completion.

Mr. Maxfield commenced work, but did not finish the work by October 2. On January 20, 1984, another hearing was held. This was the first hearing with regard to the contempt proceeding at which Mr. Maxfield was personally present. Mr. Maxfield maintains it was at this hearing he first understood that $100 per day was being levied against him for his failure to comply with the September 16 order. His motion to vacate the contempt order was denied March 29, 1984. In the meantime, he completed the work in February 1984.

On May 16, 1984, Mrs. Maxfield moved for summary judgment asking the court to reduce the accumulated fine to judgment. Mr. Maxfield countered with a motion to stay and set aside and/or gain relief from the underlying contempt order. The trial court granted Mrs. Maxfield's

motion for summary judgment, denied relief to Mr. Maxfield, and also denied Mrs. Maxfield's motion to recover maintenance and obtain contribution for house payments and other expenses paid by her. Both parties appeal.

The first issue is whether this court has jurisdiction to hear Mr. Maxfield's appeal. Mrs. Maxfield contends Mr. Maxfield has not preserved his right to appeal the September 16, 1983 contempt order. She points out he failed to appeal the March 29, 1984 denial of his motion to vacate the order of contempt and judgment of September 16, 1983, within the 30 days required by RAP 5.2(a). Consequently, denial of his subsequent May 25, 1984 motion to stay and vacate the contempt order, she reasons, is not an appealable order, citing *Wilson v. Katzer,* 37 Wn.2d 944, 226 P.2d 910 (1951).

A defeated party may not extend the time for taking an appeal by having a subsequent judgment entered. *Chilcott v. Globe Nav. Co.,* 49 Wash. 302, 95 P. 264 (1908). If notice of appeal is not filed within 30 days from entry of an appealable order, the Court of Appeals is without jurisdiction to consider that order. However, here, Mrs. Maxfield moved for summary judgment, seeking, among other things, to reduce the accumulated contempt fine to judgment in her favor.[1] In response, Mr. Maxfield was entitled to attack the validity of the underlying contempt order under CR 60(b)(5). Void orders and judgments may be vacated irrespective of lapse of time. *John Hancock Mut. Life Ins. Co. v. Gooley,* 196 Wash. 357, 370, 83 P.2d 221, 118 A.L.R. 1484 (1938); *In re Marriage of Hardt,* 39 Wn. App. 493, 496, 693 P.2d 1386 (1985). Judgment was subsequently entered upon Mrs. Maxfield's motion, and Mr. Maxfield's request that the underlying contempt order and judgment be held void was denied. Mrs. Maxfield is estopped to deny this was a

---

[1]No issue has been raised on appeal as to the appropriateness of awarding the fine to Mrs. Maxfield even though no hearing was held to determine the amount of her loss attributable to the delay in making repairs. *See* Annot., 85 A.L.R.3d 895 (1978).

final judgment and therefore appealable. *Jemo v. Tourist Hotel Co.,* 55 Wash. 595, 104 P. 820 (1909); *Herzog v. Palatine Ins. Co.,* 36 Wash. 611, 79 P. 287 (1905).

In addition, because the orders of contempt issued September 16, 1983 and March 29, 1984 prejudicially affect the final judgment and order entered March 22, 1985, they may be reviewed. RAP 2.4(b); 2 Washington State Bar Ass'n, *Appellate Practice Handbook,* rule 2.4 comment, at 30–23 (Supp. 1984).

Finally, this appeal is from the order and judgment entered March 22, 1985, and not simply an appeal of the denial of Mr. Maxfield's CR 60(b)(5) motion to vacate, although that is included. Thus, the rule that the exclusive procedure to attack an allegedly defective judgment is by appeal from judgment, and not by appeal from a denial of the CR 60(b) motion, does not apply. *See Bjurstrom v. Campbell,* 27 Wn. App. 449, 618 P.2d 533 (1980). Review of a denial of a CR 60(b) motion is generally limited to the propriety of the denial, and is not a review of the original judgment. However, if questions are raised concerning lack of trial court jurisdiction and fundamental constitutional rights, these issues may be determined on appeal as justice may require. *State v. Santos,* 104 Wn.2d 142, 702 P.2d 1179 (1985).

There is no question of trial court discretion when a judgment is void, unlike attacks on judgments based on other grounds specified in CR 60(b). The court has a nondiscretionary duty to grant relief. *Kennedy v. Sundown Speed Marine, Inc.,* 97 Wn.2d 544, 549, 647 P.2d 30 (Utter, J., dissenting), *cert. denied,* 459 U.S. 1037 (1982); *Brickum Inv. Co. v. Vernham Corp.,* 46 Wn. App. 517, 520, 731 P.2d 533 (1987); *Jordon v. Gilligan,* 500 F.2d 701, 710 (6th Cir. 1974), *cert. denied,* 421 U.S. 991, 44 L. Ed. 2d 481, 95 S. Ct. 1996 (1975); 11 C. Wright & A. Miller, *Federal Practice* § 2862, at 197 (1973). Here, the timely appeal of the final order and judgment entered March 22, 1985 necessarily brings up for review issues concerning whether procedural due process was afforded Mr. Maxfield before entry of the

underlying contempt orders of September 16, 1983 and March 29, 1984. This court has jurisdiction to hear Mr. Maxfield's appeal.

Mr. Maxfield argues he was never given his constitutionally guaranteed right to adequate notice and opportunity to be heard before the court entered its $100 a day contempt order and judgment of September 16, 1983. It is fundamental that a person must receive adequate notice and opportunity to be heard before a judgment can be entered against him. If procedural safeguards are inadequate, a court lacks jurisdiction over the defendant and cannot enter a valid order against him. *Ware v. Phillips*, 77 Wn.2d 879, 468 P.2d 444 (1970); *Esmieu v. Schrag*, 15 Wn. App. 260, 265, 548 P.2d 581 (1976), *aff'd*, 88 Wn.2d 490, 497, 563 P.2d 203 (1977); *State ex rel. First Nat'l Bank v. Hastings*, 120 Wash. 283, 207 P. 23 (1922). In a contempt proceeding, notice is sufficient if it informs the accused of the time and place of the hearing, and the nature of the charges pending. *Burlingame v. Consolidated Mines & Smelting Co.*, 106 Wn.2d 328, 335, 722 P.2d 67 (1986); *see also* RCW 7.20.040 (procedure for civil contempt proceeding). Here, the September 16, 1983 and March 29, 1984 contempt orders and judgments were based on the order to show cause entered May 24, 1983. That show cause order failed to specify the nature of the charges pending with regard to completion of the finish work on the family home. As pertinent to this appeal, the show cause order stated:

> It is hereby ordered, adjudged and decreed that Respondent Robert Maxfield be and he is hereby ordered to appear before Judge William Luscher at the Spokane County Courthouse on May 31, 1983, at the hour of 3:30 P.M., then and there to show cause if any he has, . . . why he should not be required to immediately complete the construction of the family home . . .

While the show cause order did mention contempt for his failure to pay maintenance as set forth in the decree of dissolution, it did not mention contempt with regard to completion of the construction of the family home. As such it

failed to notify Mr. Maxfield of the nature of charges pending. Based on the notice received, Mr. Maxfield could have contemplated entry of an order to complete the home, but not coercive contempt penalties.

Mrs. Maxfield contends Mr. Maxfield was ordered by the final decree of dissolution to complete the home, and that he had actual notice of the court's intentions in this regard. The court, in its finding of fact 4, alludes to having advised the attorneys, at the oral presentment of the final decree of dissolution, that Mr. Maxfield would be responsible to complete the home. However, the record does not support either Mrs. Maxfield's argument, or the court's finding. The findings, conclusions, and decree of dissolution entered October 28, 1981 provided in part:

> The Court finds that the home should be placed on the market immediately for sale and that the agent who appraised the home, Al Camerick, shall have the listing. The Court further finds that the home repairs should first be completed so that it is in first class condition.
> . . .
> . . .
> . . . That repairs shall first be completed on the home forthwith so that it is in first class condition for sale.
> . . .
> . . .
> . . . Necessary repairs to the home shall be completed forthwith.

As apparent, while the court made clear its intention that repairs be made, Mr. Maxfield was not *ordered* to make the necessary repairs. At the presentment hearing, explaining its final decree of dissolution, the court stated:

> THE COURT: This was something that each party was going to discuss to see if Mrs. Maxfield's father would come forward with a loan of $3,000 so they can complete the property for sale. Inasmuch as no one has advised me in this regard, I am going to order that the property be put on the market forthwith for sale. I'm accepting the values that they have established and have agreed upon of $170,000. *I am going to condition this, however, if Mr. Maxfield can, and Mrs. Maxfield's parents will advance*

*the money, that this property be completed so that it is in a salable first class value forthwith, it is to the advantage of both.* However, I cannot order someone to advance money who is not a party of this action. But it certainly behooves both of them to do so.

(Italics ours.)

Again, the court did not make its intent clear in the oral presentation. It appeared to condition completion on an advance of money by Mrs. Maxfield's parents. In fact, this was Mr. Maxfield's understanding as well. The record does not disclose any order by the trial court requiring Mr. Maxfield to complete the home. It does reveal serious discrepancies as to the parties' understanding about preconditions for completion, such as return of personalty, and reveals serious gaps in communication between Mr. Maxfield and his attorney. Without an *order* regarding completion of the work by Mr. Maxfield, and without notice that he should show cause why he should not be held in contempt for failure to complete the work as ordered, the court's order of contempt and judgment of September 16, 1983 was void. Therefore, the subsequent order of contempt and judgment of March 29, 1984, and the entry of summary judgment reducing the contempt fine of $12,800 to judgment cannot stand. *See Starkey v. Starkey,* 40 Wn.2d 307, 312, 242 P.2d 1048 (1952); *Schaefer v. Schaefer,* 36 Wn.2d 514, 517, 219 P.2d 114 (1950).

Mrs. Maxfield further contends Mr. Maxfield was bound by his attorney's agreements and actions regarding the September 16, 1983 contempt order, citing *Snyder v. Tompkins,* 20 Wn. App. 167, 579 P.2d 994 (1978). *Snyder* is inapposite because there, the attorney stipulated to an in-court settlement. The case had nothing to do with the validity of an order and judgment made without proper notice. At presentment, Mr. Maxfield's attorney approved the void order and judgment without argument opposing it. His affidavit refers to a discussion with Mr. Maxfield on the morning of the presentment hearing. Based on this discussion, he did not feel there would be any problem in com-

plying with the order. However, it is not apparent that he made clear this was a *contempt* order rather than an order to complete the work, nor does he indicate he told Mr. Maxfield of the contempt provisions, nor the importance of the $100 per day penalty. His affidavit also admits his failure to communicate with his client, supporting the assertions contained in Mr. Maxfield's affidavit. An attorney is without authority to surrender a substantial right of a client unless the client grants specific authority to do so. *Graves v. P.J. Taggares Co.*, 94 Wn.2d 298, 303, 616 P.2d 1223 (1980). Agreeing to a $100 per day fine without adequate prior notice to the client is within this rule. Mr. Maxfield did not give his attorney authority to waive his right to adequate notice. We hold Mr. Maxfield's attorney was without authority to bind him to the void order of contempt.[2]

In her cross appeal, Mrs. Maxfield contends Mr. Maxfield should be required to pay one–half of the mortgage payments, taxes, and insurance costs incurred in maintaining the home until its eventual sale. We disagree.

█ Following dissolution of their marriage, Mr. and Mrs. Maxfield held the family home as tenants in common. *Fritch v. Fritch*, 53 Wn.2d 496, 502, 335 P.2d 43 (1959); *Witzel v. Tena*, 48 Wn.2d 628, 632, 295 P.2d 1115 (1956). In the absence of an agreement to pay rent, or limiting or assigning rights of occupancy, a cotenant in possession who has not ousted or actively excluded the cotenant out of

---

[2]The general rule that, once a party has designated an attorney to represent him, the court and other parties are entitled to rely upon that authority until the client's decision to terminate has been brought to their attention, *Haller v. Wallis*, 89 Wn.2d 539, 547, 573 P.2d 1302 (1978), does not apply in this instance. *Graves*, at 304, addresses this point. The dissent points out an attorney's signature approving a contempt order and judgment is not the same as a stipulation or agreement, and thus a refusal to sign would not affect the authority of the court to enter its order and judgment. We have no argument here. Our discussion of Mrs. Maxfield's argument that Mr. Maxfield was bound by his attorney proceeds from the premise the September 16 order and judgment were *void*, and that no amount of notice to the attorney, or agreement that there would be no problem completing the home, could alter this. The substantial right the attorney could not surrender by his actions was the right to adequate notice.

possession is not liable for rent based upon her occupancy of the premises. *Fulton v. Fulton,* 57 Wn.2d 331, 357 P.2d 169 (1960). However, in this case, the court found the cost of house payments and utilities to be approximately $500 per month, and ordered Mr. Maxfield to pay that sum to his wife, up to $18,000 so that she might remain in *exclusive* possession of the home. Where the exclusive occupancy of the property by Mrs. Maxfield operated to exclude Mr. Maxfield, "ouster" had occurred. *Cummings v. Anderson,* 94 Wn.2d 135, 145, 614 P.2d 1283 (1980) recognized this theory in noting: "[W]here the property is not adaptable to double occupancy, the mere occupation of the property by one cotenant may operate to exclude the other". *See also* Annot., *Accountability of Cotenants for Rents and Profits or Use and Occupation,* 51 A.L.R.2d 388, 443 (1957); *Palmer v. Protrka,* 257 Or. 23, 476 P.2d 185, 190 (1970). Mrs. Maxfield is thus not entitled to reimbursement for one–half the mortgage, nor is she entitled to half the taxes and insurance. This is consistent with the general rule that where one cotenant's use of property in fact excludes others, the occupying cotenant will be required to reimburse the others for rental value of their property interest. *Fulton.* The court did not err when it denied Mrs. Maxfield's motion for contribution for one–half the mortgage payments, taxes, and insurance expenses incurred in maintaining the home.

Mrs. Maxfield's request for attorney fees on appeal is denied. Reversed as to Mr. Maxfield's appeal; affirmed as to Mrs. Maxfield's cross appeal.

McINTURFF, C.J., concurs.

GREEN, J. (dissenting)—I respectfully dissent.

On October 28, 1981, a decree of dissolution was entered dissolving the 25–year marriage of Joann and Robert Maxfield and dividing their property. Because the family home, valued at $170,000 and built by Mr. Maxfield during the marriage, had not been finished, the court ordered that it

be completed and forthwith placed on the market for sale.

On July 21, 1982 Mr. Maxfield was ordered to show why he should not be punished for his willful disobedience of the decree of dissolution, for his failure to begin the necessary processes to complete the home, and why the decree of dissolution should not be amended to reflect the inequities of Mr. Maxfield's failure to perform the necessary tasks to make the home salable.

On May 24, 1983 another show cause order was entered and served personally upon Mr. Maxfield requiring him to show why he should not be required to immediately complete construction of the family home. During a meeting in late June 1983 Mr. Maxfield agreed to finish the work by the middle of August. Mr. Maxfield did not do so and the order to show cause was set for hearing on August 22. At that time Mr. Maxfield's counsel requested a continuance which was granted. On the date set for hearing neither Mr. Maxfield nor his attorney appeared. Mrs. Maxfield served a notice of presentment on Mr. Maxfield's attorney advising that a contempt order would be entered on September 16, 1983. Mr. Maxfield's attorney was present at that hearing and approved an order of contempt and judgment against his client. This order granted Mr. Maxfield the opportunity to purge himself of the contempt by completing the work by October 2, 1983. If the work was not done by that date, the order directed a bench warrant would issue and he would be subject to a penalty of $100 a day until the work was completed. The next day, September 17, Mr. Maxfield appeared at the home and started work. His efforts were sporadic and the work was not completed as required by the order. On January 20, 1984 Mr. Maxfield moved for relief from the order of contempt but the motion was denied on March 29, 1984. The work was finally completed in February 1984.

On May 16 Mrs. Maxfield moved for summary judgment for the amount of the penalty specified in the order of contempt. On May 25 Mr. Maxfield again moved to stay and set aside and/or gain relief from the September 16, 1983

contempt order. The trial court granted Mrs. Maxfield's motion for summary judgment, denied Mr. Maxfield's motion to stay and set aside the contempt order, and also denied Mrs. Maxfield's motion to recover maintenance and obtain a contribution for house payments, insurance and tax costs that she made while awaiting Mr. Maxfield's completion of the house. Both parties appeal.

I disagree with the majority opinion that this court has jurisdiction to hear Mr. Maxfield's appeal because, in my view, the order denying his motion to vacate and set aside the September 16, 1983 contempt order was not timely.

The timely filing of a notice of appeal is jurisdictional and cannot be waived. *Glass v. Windsor Nav. Co.,* 81 Wn.2d 726, 504 P.2d 1135 (1973). If not done within 30 days of entry of an appealable order, the appellate court is without jurisdiction to consider it. RAP 5.2; *Kelly v. Schorzman,* 3 Wn. App. 908, 478 P.2d 769 (1970). Also, while a party has a right to appeal an order of contempt, if timely filed, such appeal does not bring with it the original judgment for review. *Griffin v. Draper,* 32 Wn. App. 611, 614, 649 P.2d 123 (1982). *See also In re Marriage of Osborn,* 24 Wn. App. 862, 604 P.2d 954 (1979); *Rhodes v. D & D Enters.,* 16 Wn. App. 175, 554 P.2d 390 (1976).

Here, Mr. Maxfield did not appeal the September 16, 1983 contempt order and judgment. On January 20, 1984 he moved for relief from and vacation of the September 16, 1983 order of contempt and judgment. The court denied the motion on March 29, 1984. Mr. Maxfield did not appeal that decision. Instead, on May 25, 1984 he filed another motion to stay and vacate the September 16, 1983 contempt order and judgment. Both RAP 5.2 and res judicata principles, *Bordeaux v. Ingersoll Rand Co.,* 71 Wn.2d 392, 396, 429 P.2d 207 (1967); *In re Hansen,* 24 Wn. App. 27, 35, 599 P.2d 1304 (1979), preclude Mr. Maxfield under the circumstances presented from attacking the September 16, 1983 order of contempt and judgment or raising any issues regarding it. Neither should he be allowed to appeal from the denial of the motion to vacate that order. Mr. Maxfield

is not permitted by the rules of court or judicial fairness to extend the time for appeal from a denial of a motion to vacate the contempt order by filing another motion asking for the same relief.

However, even if this appeal is timely in that it is an appeal of the March 22, 1985 order and judgment which the majority decides included the appeal of the denial of the motion to vacate, I would hold the court did not err in refusing to set aside the contempt order and judgment.

It is well established vacation of a judgment under CR 60(b) is within the trial court's discretion and its decision will be overturned on appeal only if it appears its discretion has been abused. *State v. Santos,* 104 Wn.2d 142, 145, 702 P.2d 1179 (1985); *In re Adamec,* 100 Wn.2d 166, 173, 667 P.2d 1085 (1983); *Kennedy v. Sundown Speed Marine, Inc.,* 97 Wn.2d 544, 548, 647 P.2d 30, *cert. denied,* 459 U.S. 1037 (1982). An appeal from a denial of a CR 60(b) motion is generally limited to the propriety of the denial, but a party may raise for the first time on appeal a claim either that the trial court lacked jurisdiction or issues affecting constitutional rights. *State v. Santos, supra* at 145–46. Also, CR 60(b)(5) permits vacation of a judgment which is void. A judgment which is entered without jurisdiction over the parties is void. *Mid–City Materials, Inc. v. Heater Beaters Custom Fireplaces,* 36 Wn. App. 480, 486, 674 P.2d 1271 (1984); *Lee v. Western Processing Co.,* 35 Wn. App. 466, 469, 667 P.2d 638 (1983). *See also Kennedy v. Sundown Speed Marine, Inc., supra* at 548.

For a court to have jurisdiction to proceed to judgment, adequate notice must be given, *i.e.,* the notice must apprise the party to whom it is directed that his property is in jeopardy. *In re Marriage of Campbell,* 37 Wn. App. 840, 844–45, 683 P.2d 604 (1984). In *Burlingame v. Consolidated Mines & Smelting Co.,* 106 Wn.2d 328, 333, 722 P.2d 67 (1986), the court in a lengthy discussion held that notice in a contempt proceeding is not as crucial as in the initiation of a civil proceeding, and therefore notice in a contempt proceeding is sufficient if it informs the accused of

the time and place of the hearing and the nature of the pending charges.

The majority holds the orders to show cause and the documents supporting them, *i.e.,* the dissolution decree, were not sufficiently clear to meet the minimal requirements of procedural due process and thus the contempt order was without foundation and void. In my view, the record supports the opposite conclusion.

Here, the show cause orders personally served on Mr. Maxfield gave the time and place of hearing and ordered him to show cause why he should not be punished for his willful disobedience of the dissolution decree for his failure to complete the home. In June 1983 after receiving the show cause orders, Mr. Maxfield admits he agreed to perform the work by mid–August 1983. When that time came and went and the work was not done, a new date was set for a show cause hearing. Service of the new hearing date was made on Mr. Maxfield's attorney pursuant to CR 5(b)(1) which allows service on a party's attorney. Thus, we conclude Mr. Maxfield was adequately notified of the hearings and the issue to be resolved.

The dissolution decree stated: "Necessary repairs to the home shall be completed forthwith" without designating who was to do the repairs. However, in his oral decision preceding entry of the dissolution decree, the trial judge made several statements pertinent to this issue: "I am going to condition this, however, *if Mr. Maxfield can,* and Mrs. Maxfield's parents will advance the money, that this property be completed so that it is in a salable first class value forthwith, it is to the advantage of both"; the husband, after the parties separated, never came back to finish the home, although he had the equipment to do so; there was $3,121 in hold backs reserved to finish the house but the money had to be used to make the house payments. The court also pointed out that Mr. Maxfield testified the materials necessary to complete the home would cost approximately $2,800, the work could be completed in perhaps a week, and both parties testified the husband was a

carpenter. Reading the dissolution decree in light of the issues, *i.e.*, division of the property which included the sale of the family home, *Johnston v. Beneficial Management Corp.*, 96 Wn.2d 708, 712–13, 638 P.2d 1201 (1982); *State v. International Typographical Union*, 57 Wn.2d 151, 158, 356 P.2d 6 (1960) (quoting *Terminal R.R. Ass'n v. United States*, 266 U.S. 17, 69 L. Ed. 150, 45 S. Ct. 5 (1924)), it is clear from the court's oral ruling and Mr. Maxfield's own testimony that he knew he was responsible for completing the work on the family home.

Furthermore, Mr. Maxfield's contention his attorney did not give him notice of the penalty imposed by the September 16, 1983 contempt order is not properly before this court. The general rule is that once a party has designated an attorney to represent him in a particular matter, the court and other parties are entitled to rely upon that authority until the client's decision to terminate has been brought to their attention. *Graves v. P.J. Taggares Co.*, 94 Wn.2d 298, 304, 616 P.2d 1223 (1980); *Haller v. Wallis*, 89 Wn.2d 539, 547, 573 P.2d 1302 (1978). Here, Mr. Maxfield never advised the court or the other parties he had terminated the authority of his attorney, nor does he contend that he did so. In this situation, an attorney's knowledge is deemed to be the client's knowledge when the attorney acts on his behalf; but as between the attorney and client, there is a duty to keep the client informed of material developments in the matters being handled for the client. *Haller v. Wallis, supra* at 547. As the trial judge aptly stated, Mr. Maxfield's contention he did not receive notice of the terms and penalties imposed by the contempt order is a matter between Mr. Maxfield and his former attorney and not properly before the court in the present proceeding.

The majority relies on *Graves v. P.J. Taggares Co., supra* at 303, for the proposition an attorney is without authority to surrender a substantial right of a client unless the client grants specific authority to do so. In *Graves* the attorney stipulated to liability without his client's consent. *See also Haller v. Wallis, supra,* involving a settlement without the

client's authority. That is not the case here. The conduct claimed to have been done without Mr. Maxfield's consent or authorization was the attorney's signature approving the September 16 contempt order and judgment. The approval of the order could mean nothing more than it expressed the trial court's decision. It was not an order based on a stipulation or agreement. Mr. Maxfield's attorney's refusal to approve the order as to form would be inconsequential, *see* CR 54(f), not affecting the authority of the court to enter its order of contempt and judgment. By approving the order, the attorney did not surrender a substantial right of Mr. Maxfield's nor prevent Mr. Maxfield from challenging the order of contempt had there been a timely appeal. The power of the court to enter the order of contempt is not dependent upon the signature or approval of the attorneys. Thus, I do not find *Graves v. P.J. Taggares Co., supra,* controlling.

For these reasons, I would hold the trial court did not abuse its discretion in denying Mr. Maxfield's motion to vacate the September 16, 1983 contempt order and judgment.

As to the cross appeal, I agree with Mrs. Maxfield that Mr. Maxfield should be required to pay one–half of the mortgage payments, taxes and insurance expenses incurred in maintaining the home while awaiting its completion.

Mr. and Mrs. Maxfield held the property as tenants in common. *Fritch v. Fritch,* 53 Wn.2d 496, 502–03, 335 P.2d 43 (1959); *Witzel v. Tena,* 48 Wn.2d 628, 632, 295 P.2d 1115 (1956). A tenant in common is entitled to contribution from his cotenant for outlays upon the common burden or liability of both of them to pay the taxes, encumbrances and other charges for the benefit of the common property. *Cook v. Vennigerholz,* 44 Wn.2d 612, 269 P.2d 824 (1954); *Walters v. Walters,* 1 Wn. App. 849, 851–52, 466 P.2d 174 (1970).

The dissolution decree provided the house payments and maintenance costs were to be paid out of certain insurance proceeds placed in a joint account. It was anticipated the

house would sell prior to depletion of these proceeds. However, because of the failure to timely complete the home, the proceeds were depleted prior to the sale. Based on the contempt order and judgment, it is clear the delay was caused by Mr. Maxfield's neglect. Mrs. Maxfield should not be penalized for such delay. Thus, I conclude the court erred by denying Mrs. Maxfield's motion for contribution for one–half of the mortgage payments, taxes and insurance expenses incurred in maintaining the home pending its completion.

Therefore, I would affirm the denial of the motion to vacate the contempt order, but reverse as to Mrs. Maxfield's cross appeal and require Mr. Maxfield to contribute one–half of the costs incurred in maintaining the home pending its completion.