# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | DIVISION ONE |
| | ) | |
| RYAN S. VATNE, | ) | No. 75512-9-I |
| | ) | |
| Appellant, | ) | UNPUBLISHED OPINION |
| | ) | |
| and | ) | |
| | ) | |
| JULIET A. VATNE, | ) | |
| | ) | |
| Respondent. | ) | FILED: January 16, 2018 |
| | ) | |

DWYER, J. — Ryan Vatne appeals from the trial court's distribution of property and order of child support entered in conjunction with a decree of dissolution. He contends that the trial court erred in imputing income to him and failing to impute income to his former wife, Juliet Vatne. Ryan[1] also challenges the trial court's deviation from the standard calculation of child support, the characterization of the parties' assets and liabilities, and the trial court's alleged bias in favor of Juliet. We remand for the trial court to reconsider the manner in which it attempted to deviate from the standard calculation. In all other respects, we affirm.

---

[1] For clarity we refer to the parties by their first names.

I

Ryan and Juliet were married on April 4, 2013 in Florida. On October 27, 2013, Juliet gave birth to twins, A.V. and T.V. On February 25, 2014, when the children were approximately four months old, the family relocated to Washington in order for Ryan to accept a job at Microsoft.

On July 19, 2014, the family flew to Florida to visit Juliet's family. A few days later, on July 24, an altercation occurred at Juliet's mother's home during which, Juliet later stated in court documents, Ryan emotionally and physically threatened her.

On July 25, 2014, Juliet obtained an ex parte order for temporary custody of the children in Miami-Dade County, Florida. Juliet informed Ryan that she intended to stay in Florida with the children. On the same day, Ryan filed a petition for dissolution in King County, Washington. Ryan obtained an ex parte temporary order providing the children should reside with him, prohibiting Juliet's contact with them, and ordering their return to Washington.

Juliet filed a motion in King County requesting that Washington relinquish jurisdiction of the portion of the dissolution proceeding relating to the children to Florida pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act. On October 6, 2014, Judge Judith Ramseyer granted Juliet's motion, ruling that Florida was the children's home state for the purposes of establishing a parenting plan. Judge Ramseyer bifurcated the proceeding and allowed matters related to the parties' dissolution,

division of property, and child support to proceed in Washington. On November 6, 2014, Judge Ramseyer denied Ryan's motion for reconsideration. The order on reconsideration clarified that any proceedings in Washington relative to parenting the children were dismissed without prejudice.

On March 17, 2015, a King County Superior Court commissioner entered temporary orders requiring Ryan to pay Juliet $1,400 per month in maintenance and $1,326.81 in child support.

Trial on the dissolution began on August 31, 2015 before Judge John Ruhl. Both Ryan and Juliet appeared pro se. Juliet participated telephonically from Florida. Following nine days of trial broken up over the course of several months, the trial court entered findings of fact and conclusions of law, a decree of dissolution, and an order of child support. Ryan appeals.

II

Ryan first contends that Judge Ramseyer erred in determining that Florida was the children's home state. But Ryan did not timely appeal Judge Ramseyer's order of dismissal. A notice of appeal must be filed within 30 days after entry of the superior court's decision for which review is sought, or within 30 days of the denial of a timely motion for reconsideration. RAP 5.2(a). If a notice of appeal is not filed "within 30 days of entry of an appealable order, the appellate court is without

3

jurisdiction to consider it." In re Marriage of Maxfield, 47 Wn. App. 699, 710, 737 P.2d 671 (1987). Thus, we do not address this claim.

III

Ryan contends that the superior court commissioner erred in failing to impute income to Juliet in the March 17, 2015 temporary support order. But because temporary support orders are not final judgments under RAP 2.2(a)(1), they are not appealable. Moreover, temporary support orders terminate upon the entry of a final decree. RCW 26.09.060(10)(c). Accordingly, we do not address the temporary orders in this appeal. Ryan additionally contends that the trial court refused to hear his motion to modify the temporary support order. Because Ryan did not designate the motion, the record is inadequate for review of this claim. See RAP 9.1; In re Marriage of Haugh, 58 Wn. App. 1, 6, 790 P.2d 1266 (1990) (the appellant has the burden of perfecting the record so that the court has before it all the evidence relevant to the issue raised on appeal).

Ryan next argues that the trial court erred in imputing income to him. A trial court calculates the child support obligation based on the combined monthly income of both parents. In re Marriage of Pollard, 99 Wn. App. 48, 52, 991 P.2d 1201 (2000). In calculating income, a trial court must determine whether a parent is voluntarily unemployed or underemployed based on that parent's "work history, education, health, and age, or any other relevant factors." RCW 26.19.071(6). A parent who is "'purposely underemployed to reduce the parent's child support obligation'" will have

4

income imputed to them. In re Marriage of Peterson, 80 Wn. App. 148, 153, 906 P.2d 1009 (1995) (quoting RCW 26.19.071(6)). Under RCW 26.19.071(6), a trial court imputes income at a past rate of pay where information on current or historical rates of pay is incomplete or sporadic.

We review an order of child support for an abuse of discretion. In re Marriage of Griffin, 114 Wn.2d 772, 776, 791 P.2d 519 (1990). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

Here, the trial court found that Ryan, who was terminated from Microsoft in September 2015, was voluntarily unemployed at the time the findings were entered in April 2016.

> Throughout the parties' marriage, the petitioner was employed at Microsoft Corporation. His income consisted of wages, annual bonus, and stock award. In 2013, his W-2 wages and other compensation totaled $126,369 (Tr. Ex. 58). In 2014, his W-2 wages and other compensation totaled $129,767 (Tr. Ex. 59). In September 2015, the petitioner was terminated from his position at Microsoft, and he remained unemployed at the time of the trial. The court is constrained to find that the petitioner was voluntarily unemployed during this period.
>
> Pursuant to RCW 26.19.071(6)(b), it is appropriate to impute income to the petitioner based on his historical rate of pay during 2015, which is the most recent year during which the petitioner was employed on a full-time basis.

Ryan asserts that the evidence was insufficient to support the finding that he was voluntarily unemployed. But there was no evidence showing that Ryan was unemployable. At the time of trial, Ryan was 37

years old and had a history of high paying jobs in the tech industry. The record is devoid of any factors that might have contributed to his alleged inability to find work, such as health problems or the employment conditions in his chosen field. Ryan testified only that he "very much hope[d]" to have a job soon and that he had "been working on it." Under the circumstances, substantial evidence supported the trial court's finding that Ryan was voluntarily unemployed.

IV

Ryan next contends that the trial court erred in granting a deviation from the standard calculation of child support. Because the trial court lacked authority to deviate in the manner in which it did, we agree.

After determining the presumptive amount of child support owed, a court may, in its discretion, deviate from the standard calculation. RCW 26.19.075(1)(a); Griffin, 114 Wn.2d at 776. Expenses such as health care and long-distance transportation for visitation are not included in the basic child support obligation. RCW 26.19.080(3). A trial court has the discretion to determine the necessity and reasonableness of these expenses. RCW 26.19.080(4). However, if such expenses are awarded, they must be shared by the parents "in the same proportion as the basic child support obligation." RCW 26.19.080(3); In re Yeamans, 117 Wn. App. 593, 599-600, 72 P.3d 775 (2003). This language is mandatory and generally allows no room for the court's exercise of discretion. In re Marriage of Scanlon, 109 Wn. App. 167, 181, 34 P.3d 877 (2001). If the

6

trial court does not deviate from the basic child support obligation, then it cannot deviate from that proportion when allocating the extraordinary expenses. Yeamans, 117 Wn. App. at 601.

Here, the trial court imputed monthly net income of $9,330.16 to Ryan and $4,083.33 to Juliet. Ryan's proportional share of the combined net income was 70 percent and Juliet's proportional share was 30 percent. The trial court granted a deviation from the basic child support calculation as follows:

Pursuant to RCW 26.19.075, the child support amount ordered in paragraph 3.5 reflects offsetting deviations from the standard calculation for the following reasons:

1. Upward Deviation to Account for Respondent's Court-Ordered Obligations. The court finds credible the respondent's testimony that at this time, she may incur lost wages and additional costs due to the obligations that the Florida court is imposing upon her in the currently pending dependency litigation, including orders requiring her to: (a) go to her own therapy and counseling sessions; (b) take the children to therapy and counseling sessions and other court-ordered appointments; and (c) take the children to court-approved locations so that the children can visit with the petitioner via Skype. The court therefore finds that it is appropriate and equitable to increase the petitioner's support obligation by 15% ($243 per month), to help compensate the respondent for potential work time that the respondent loses due to her compliance with orders of the Florida court. On or after the earlier of the date on which (a) the Florida court terminates the Florida dependency proceedings, or (b) the Florida court substantially increases or decreases the above-described obligations of the respondent, either party may seek an order modifying the amount of the temporary increase described in this paragraph 3.7.1. This provision is subject to any future adjustment or modification by this court or by the Florida court, which for the time being has ceded jurisdiction to this court with respect to child-support issues.

2. Downward Deviation for Petitioner's Transportation Long-Distance Transportation Expenses. Based upon the request of the

respondent during trial, however, the court finds that it is appropriate and equitable to reduce the petitioner's child support obligation by allowing the petitioner a credit to satisfy the respondent's obligation to pay her proportional share of the long-distance transportation costs that the petitioner is expected to incur in traveling between Washington and Florida for purposes of visiting the children. The court finds that it is equitable to allow the petitioner a credit in the amount of 15% per month ($243 per month), which shall be taken in the form of a reduction of the petitioner's child support payment. The petitioner shall provide the respondent with documentation for all actual long-distance transportation charges that he incurs. This provision is subject to any future adjustment or modification by this court or by the Florida court, which for the time being has ceded jurisdiction to this court with respect to child-support issues.

These off-setting deviations result in a child support transfer payment equal to the standard calculation as found on the child support worksheets incorporated herein.

Here, the trial court appeared to acknowledge that each party bore a unique financial burden – Juliet was responsible for transporting the children to Skype visits and therapy appointments ordered by the Florida court, while Ryan was responsible for traveling to and from Florida to see the children. It appears that the trial court attempted to offset each of these burdens while allowing Juliet and Ryan to avoid the reimbursement provisions of RCW 26.19.080. But this was not within the trial court's authority to do. A trial court has the discretion to award, or not award, payment for long-distance transportation expenses. Here, the order of child support does not reflect an award of transportation expenses; on the worksheet used to calculate the transfer payment amount, the space for long-distance transportation expenses is blank. Had the trial court chosen to award transportation expenses, it was required by statute to apportion

them in the same proportion as the basic child support obligation: 70 percent to Ryan and 30 percent to Juliet.

Moreover, Juliet's potential loss of income due to the time spent transporting the children to visits and appointments is not a proper basis for a deviation. If Juliet cannot work full time, the appropriate remedy is for the trial court to impute her income at an adjusted level during the dependency proceedings, resulting in a lower combined monthly net income and a change in the relative percentage allocation. The trial court may then consider a proper basis for deviation.

Accordingly, we remand to the trial court to clarify whether it intended to award long-distance transportation expenses and to reconsider its decision to grant any deviation in accordance with RCW 26.19.080.[2]

V

Ryan contends the trial court erred in distributing the parties' assets and liabilities. In a dissolution proceeding, all property, both community and separate, is before the court for distribution. In re Marriage of Brewer, 137 Wn.2d 756, 766, 976 P.2d 102 (1999). The trial court has broad discretion to make a just and equitable distribution of the property based on the factors enumerated in RCW 26.09.080.[3] In re Marriage of Rockwell,

---

[2] It appears that the trial court did not actually intend to deviate from the basic child support obligation, noting that the upward deviation and the downward deviation did not result in a change in the transfer payment. Nothing in this opinion precludes the trial court from choosing not to deviate from the basic child support obligation on remand.

[3] This provision provides, in pertinent part, for the following:
In a proceeding for dissolution of the marriage . . . the court shall, without regard to misconduct, make such disposition of the property and the liabilities of the

141 Wn. App. 235, 242-43, 170 P.3d 572 (2007). A division of property need not be precisely equal; rather, it must be fair to both parties depending on their circumstances at the time of dissolution. RCW 26.09.080. A trial court does not abuse its discretion by awarding the separate property of one spouse to the other spouse, so long as the award results in a just and equitable distribution of assets. In re Marriage of Irwin, 64 Wn. App. 38, 48, 822 P.2d 797 (1992). Because the trial court is in the best position to determine what is fair and equitable, its decision will be reversed only upon a showing of a manifest abuse of discretion. In re Marriage of Buchanan, 150 Wn. App. 730, 735, 207 P.3d 478 (2009).

Ryan first contends that the trial court erred in characterizing his retirement accounts as community property.[4] Here, the trial court found as follows:

> Fidelity 401k Account ****9766. (Ex. 307 [Interrogatory No. 38(d) & (e)]). The court finds that this asset consists partly of community property funds and partly of separate property funds. The community property portion is $24,361, which is the difference between the $75,771.52 balance on the Date of Separation (which

---

parties, either community or separate, as shall appear just and equitable after considering all relevant factors including, but not limited to:

    (1) The nature and extent of the community property;
    (2) The nature and extent of the separate property;
    (3) The duration of the marriage or domestic partnership; and
    (4) The economic circumstances of each spouse or domestic partner at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse or domestic partner with whom the children reside the majority of the time.

RCW 26.09.080.

[4] Ryan also contends that the trial court erred in characterizing Juliet's retirement accounts as separate property. It is unclear to what Ryan is referring, given that the trial court's findings do not include any reference to Juliet's separate retirement accounts.

is also the valuation date of this asset) and the $54,410.82 balance on the Date of Marriage. The $24,361 community property portion would be awardable equally to each spouse, but the court finds that it is fair and equitable to award an additional $1,000 of the petitioner's share of the community property portion of this asset to the respondent as compensation for the petitioner's failure or refusal to return the respondent's piano to her (See Paragraph 2.10, below). The community property portion of this asset therefore is awarded and credited as follows: $11,181.00 to the petitioner, and $13,180.00 to the respondent. The remainder of the balance in the account is awarded and credited to the petitioner as his separate property.

Fidelity Roth IRA Account ****4575. (Ex. 307 [Interrogatory No. 38(e)]). The court finds that this asset consists partly of community property funds and partly of separate property funds. The community property portion is $296, which is the difference between the $10,043.83 balance on the Date of Separation (which is also the valuation date of this asset) and the $9,747.40 balance on the Date of Marriage. The $296 community property portion is awarded and credited equally to each spouse. The remainder of the balance in the account is awarded and credited to the husband as his separate property.

Ryan asserts that the amount of contributions into the 401(k) account during the marriage totaled only $10,430.09. He contends that the trial court erred in characterizing gains on the premarital portion of the investments as community property. But Ryan did not designate any of the relevant trial exhibits to this court for consideration on appeal. His failure to provide those exhibits precludes consideration of his claim.

Ryan also challenges the trial court's decision to award Juliet compensation for her piano. Juliet testified that she owned an electric piano that cost between $3,200 and $3,800 when she purchased it. She asserted that Ryan did not return the piano to her after the couple separated but instead donated it to the Salvation Army. The trial court

11

found that the piano was Juliet's separate property and awarded Juliet an additional $1,000 of Ryan's share of the 401(k) account. Ryan argues that Juliet testified that she did not want reimbursement of the piano "because I just want the divorce to be finalized." But the evidence was undisputed that Juliet owned the piano and Ryan disposed of it after the separation. The trial court was entitled to award Juliet the value of the piano as part of its fair and equitable distribution of assets.

Ryan next contends that the trial court failed to include utility bills and thousands of dollars in loans from family members in its calculation of community liabilities. But Ryan did not designate any part of the record relevant to this claim except for a copy of a check for $2,012.20 made out to the City of Carnation and signed by his mother, Sharon Vatne. The trial court found that "[t]he petitioner's proposed assets and liabilities worksheet indicates that" all debts to Sharon Vatne were "his separate property debt." Ryan fails to demonstrate that this was an abuse of discretion.

Ryan argues that the trial court failed to consider income that Juliet received in the form of reimbursement for medical expenses as well as Juliet's 2013 tax refund. But the trial court divided all the funds in the couple's multiple bank accounts. The record before us on appeal does not show that the trial court failed to consider this income.

Finally, Ryan contends that the trial court erred in calculating his income based on an incorrect federal tax withholding. Ryan fails to support

this assignment of error with any argument, authority or citation to the record. No appellate relief is warranted.

VI

Ryan argues that the trial judge demonstrated bias by awarding Juliet the value of the piano, permitting Juliet to call witnesses by telephone when he was not allowed to do so, and restricting the amount of time for Ryan's questioning of witnesses.

There is a presumption that a judge performs his or her functions regularly and properly without bias or prejudice. Kay Corp. v. Anderson, 72 Wn.2d 879, 885, 436 P.2d 459 (1967). A party seeking to overcome that presumption must offer evidence of a judge's actual or potential bias. State v. Dominguez, 81 Wn. App. 325, 329, 914 P.2d 141 (1996).

Here, Ryan produces no evidence of bias. As discussed above, the trial court was well within its discretion to award Juliet the value of the piano. As for Ryan's claims regarding the questioning of witnesses, the trial court has broad discretion to control the admission and presentation of evidence. State v. Rehak, 67 Wn. App. 157, 162, 834 P.2d 651 (1992). Ryan neither requested the opportunity to call witnesses by telephone nor made any arrangements to do so. And because Ryan continually attempted to question witnesses on subjects that were not in front of the trial court, such as the welfare of the children, the trial court was well within its discretion to limit the length and scope of Ryan's questioning.

Affirmed in part, and remanded.

We concur: