**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

Filed
Washington State
Court of Appeals
Division Two

September 7, 2022

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DEPARTMENT OF LABOR AND INDUSTRIES OF THE STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>FOWLER, NAT D. and MARY M. d/b/a FARM BOY DRIVE IN,<br><br>Appellants. | No. 55806-8-II<br><br><br><br>PUBLISHED OPINION |

VELJACIC, J. — In Winter 2020, Nat D. Fowler and Mary M. Fowler (the Fowlers), dba "Farm Boy Drive In" (Farm Boy),[1] operated indoor dine-in services in violation of the Department of Labor and Industries' (DLI) COVID-19 emergency rules, which in turn implemented Governor Jay Inslee's emergency proclamations. DLI issued an order of immediate restraint (OIR) under RCW 49.17.130 to stop Farm Boy from providing indoor dine-in services. Farm Boy did not comply. DLI sought a temporary restraining order (TRO) under RCW 49.17.170, asking the trial court to enforce its OIR. The trial court issued the requested TRO ex parte. Farm Boy did not comply with the TRO and was twice held in contempt. The trial court then issued a preliminary injunction which, like the TRO, prohibited Farm Boy from providing indoor dine-in services. On February 1, 2021, indoor dine-in services were permitted once again in Thurston County.

---

[1] The pleading captions from the trial court alternatively list the defendants as Nat D. Fowler and Mary M. Fowler, dba Farm Boy or Farm Boy Drive In, or simply Farm Boy. In this opinion, we will generally refer to defendants/appellants as "Farm Boy" for clarity, while recognizing that the Fowlers are doing business as Farm Boy.

55806-8-II

Subsequently, Farm Boy filed a motion under CR 4, 12, and 60 to dismiss and vacate the TRO, the two contempt orders, and the preliminary injunction. The trial court entered an order denying Farm Boy's motion and discontinuing the action, from which they now appeal.

Farm Boy argues that the trial court erred in denying their motion to dismiss and vacate because the TRO was issued in violation of procedural due process requirements, which renders it void. Farm Boy contends that because the TRO is void, the contempt orders that flow from the TRO cannot stand and must also be vacated. Farm Boy also contends that the order granting the preliminary injunction is void and that the trial court erred by discontinuing the action.

We hold that the TRO is void because it was issued in violation of procedural due process requirements. Because the disobedience of a void order is not contempt, the contempt orders likewise cannot stand. With respect to the order granting DLI's request for a preliminary injunction, the issues are moot because we cannot provide Farm Boy effective relief. Accordingly, we reverse the trial court's order denying Farm Boy's CR 60 motion to dismiss and vacate and remand for the trial court to vacate the December 29, 2020 and February 9, 2021 contempt orders.

FACTS

This appeal concerns the trial court's December 16, 2020 emergency TRO; December 29, 2020 and February 9, 2021 contempt orders flowing from the TRO; and April 30, 2021 order, which denied Farm Boy's CR 60 motion to vacate these orders.

I.    BACKGROUND

On January 21, 2020, the Washington State Department of Health confirmed the first case of the novel coronavirus (COVID-19) in the United States in Snohomish County, Washington. COVID-19 is a respiratory disease that spreads easily from person to person and can result in

2

55806-8-II

serious illness or death. Restaurants have been identified as high risk hazards and powerful contributors to the spread of COVID-19.

Governor Inslee issued a series of emergency proclamations to address the dangers presented by COVID-19. On November 15, 2020, Governor Inslee issued the following emergency proclamation, which in relevant part prohibited restaurants and bars from providing indoor dine-in services:

> **FURTHERMORE**, pursuant to RCW 43.06.220(3), the prohibitions set forth in Proclamations 20-25, et seq., are modified as set forth below. Unless otherwise specifically noted, the modifications take effect at 12:01 a.m., Tuesday, November 17, 2020. All modifications to existing prohibitions set forth herein shall expire at 11:59 p.m., Monday, December 14, 2020, unless otherwise extended.
> . . . .
> **3. Restaurants and Bars** are closed for indoor dine-in service. Outdoor dining and to-go service are permitted, provided that all outdoor dining must comply with the requirements of the Outdoor Dining Guidance here. Table size for outdoor dining is limited to a maximum of five (5) people. These modified restaurant and bar restrictions go into effect at 12:01 a.m. Wednesday, November 18, 2020.

Clerk's Papers (CP) at 231 (hyperlink omitted). Subsequent emergency proclamations extended this prohibition until February 1, 2021—when Thurston County entered Phase II of the Governor's statewide reopening plan, which permitted limited indoor dine-in services.

In 1973, the legislature enacted the Washington Industrial Safety and Health Act (WISHA) to ensure that workers in the state would be provided "safe and healthful working conditions." RCW 49.17.010; LAWS OF 1973 ch. 80, § 1. The legislature delegated the authority to create rules and regulations governing safety and health standards to the director of DLI. RCW 49.17.040. The legislature also granted the director the authority to issue OIRs to prohibit business activities that violate DLI's rules or regulations:

> If upon inspection or investigation, the director, or his or her authorized representative, believes that an employer has violated . . . any safety or health standard promulgated by rules of the department . . . which violation is such that a

3

> danger exists from which there is a substantial probability that death or serious physical harm could result to any employee, the director or his or her authorized representative shall issue a citation and may issue an order immediately restraining any such condition, practice, method, process, or means in the workplace.

RCW 49.17.130(1).

Prior to the alleged violations, DLI enacted an emergency rule prohibiting employers from engaging in business activities which violate the Governor's emergency proclamations. WAC 296-800-14035. The emergency rule reads,

> (1) Where a business activity is prohibited by an emergency proclamation an employer shall not allow employees to perform work.
> (2) Employers must comply with all conditions for operation required by emergency proclamation issued under RCW 43.06.220.
> (3) An "emergency proclamation" means a proclamation that is in effect, including proclamation amendments and conditions, and issued under RCW 43.06.220 and is in effect at the time the emergency rule was adopted.

WAC 296-800-14035. The effect of this emergency rule was that, from November 18, 2020, to February 1, 2021, restaurants in Thurston County were prohibited from providing indoor dine-in services.

II.    EVENTS LEADING TO THE OIR

Farm Boy is a restaurant located in Olympia. In early December 2020, DLI learned through media reports that Farm Boy was allowing indoor dine-in services in violation of the Governor's emergency proclamation and WAC 296-800-14035. In fact, on December 1, Farm Boy[2] publicly announced on its Facebook page that it intended to "re-open for DINE-IN and take-out business" the following day and "expect[ed] repercussions." CP at 332.

---

[2] The record shows that a "Brian" and "Ali" made the post; it is unknown whether they were acting as agents of the Fowlers in making the post.

4

Anne Soiza, the Assistant Director for the DLI's Division of Occupational Safety and Health (DOSH), stated in a declaration that on December 4 a Compliance Safety and Health Officer (CSHO) drove past Farm Boy and observed customers inside.[3]  As a result, the CSHO supervisor attempted to contact Farm Boy by telephone to speak with the owner or manager.  They were informed that no owner or manager was present.  The CSHO supervisor was asked to provide their contact information, which they did, but the CSHO never received a response from an owner or manager.

On December 7, DLI issued to "Farm Boy Drive In" an OIR pursuant to RCW 49.17.130(1).  The OIR directed Farm Boy to immediately cease providing indoor dine-in services based on the Governor's November 15 emergency proclamation and WAC 296-800-14035.  According to a Fed Ex tracking receipt, the OIR was delivered to Farm Boy on December 8.  The OIR does not mention DLI's authority to seek a TRO in the event Farm Boy fails to comply.

On December 8, DLI issued a citation and notice to the Fowlers, dba Farm Boy Drive In, based on Farm Boy's failure to comply with WAC 296-800-14035.  Farm Boy received the citation and notice on December 9.

---

[3] Many of DLI's declarations in support of its petition for injunctive relief were based on the observations of other, unnamed CSHOs.  DLI contends that the CHSOs remain unnamed because

> CSHOs have encountered significant difficulties in their efforts to perform inspections related to COVID-19.  Their safety has been threatened at workplaces, and while performing inspections their names and contact information have been published on Facebook and other social media platforms.  As a result of this, CSHOs have been bombarded with emails and voicemail messages regarding COVID-19 enforcement efforts.  In many instances these communications have been extremely threatening.

CP at 251.  In light of our decision, we do not reach Farm Boy's hearsay arguments related to these declarations.

55806-8-II

Soiza stated that on December 10 a CSHO drove past Farm Boy and observed cars in the parking lot, a neon sign reading "Open," and people inside the restaurant sitting at a table. CP at 252.

III.  PROCEDURAL HISTORY

A.    The Petition and TRO

On December 15, DLI filed a petition requesting the trial court to (1) compel Farm Boy's compliance with its OIR under RCW 49.17.130 and (2) to provide injunctive relief under RCW 49.17.170.[4]  In relevant part, DLI alleged that,

> 3.12    Not complying with the Governor's proclamations limiting public exposure to the virus, RCW 49.17.060(1)'s safe work place standards, and DOSH safety and health regulations, potentially exposes workers to respiratory droplets that cause Covid-19 infection: a hazard that can cause serious injury or death.

> 3.13    [Farm Boy] has publicly stated that it intends to remain open in violation of the Governor's Proclamations and the [OIR].  Social media posts confirm that the restaurant has continued to provide indoor dine-in services.

> 3.14    By continuing to provide indoor dine-in services, [Farm Boy] presents an immediate and serious danger to employees necessitating immediate intervention.  There is a substantial probability that death or serious physical harm could result to any employee before such danger can be eliminated through the regular enforcement procedures otherwise provided by RCW 49.17.

> 3.13 By continuing to offer indoor dining, [] [Farm Boy] is endangering the health and safety of its employees, employees at other jobsites, and the general public, and is violating RCW 49.17.060, and WAC 296-800-14035 and WAC 296-800-11005.

---

[4] RCW 49.17.170(1) provides in relevant part that,

> In addition to and after having invoked the powers of restraint vested in the director as provided in RCW 49.17.130 the superior courts of the state of Washington shall have jurisdiction upon petition of the director, through the attorney general, to enjoin any condition or practice in any workplace from which there is a substantial probability that death or serious physical harm could result to any employee immediately or before the imminence of such danger can be eliminated through the enforcement procedures otherwise provided by this chapter.

55806-8-II

> 3.14     Immediate relief, including enforcement of the [OIR], and a [TRO], will protect employees from the transmission of COVID-19, thus preventing serious bodily harm or death.

CP at 6.[5]

The Assistant Attorney General (AAG) for DLI filed a supporting affidavit with the petition.  The AAG certified, in writing, the efforts that have been made to give notice to Farm Boy:

> 7. At approximately 10:15 a.m. on December 15, 2020 I telephoned [Farm Boy's] publicly available telephone number (360) 754-8442 to provide notice of [DLI's] petition for [the TRO].  The woman who answered the phone advised me that there were no managers or owners present and took my name and number.  Shortly thereafter I received a call from "Ally," who said "You just called my restaurant."  I advised Ally that, since [Farm Boy] was still open, [DLI] would be going to court to seek an order directing them to stop.  I further advised Ally that [Farm Boy] would receive copies of the documents and that I would email copies as well.  Ally responded, "OK."

> 8. Immediately after our call ended, Ally called me back and asked "What about our appeal?"  I asked if she was referring to the citation that [Farm Boy] had received and Ally responded "Yes, we already appealed that and we have a lawyer so I don't understand what you're trying to do here."  I told Ally that I needed to speak with her lawyer and she said she would have him call me.  As of 11:30 p.m. on December 15, I have not received a call from an attorney representing [Farm Boy].

> 9. On December 15, 2020, I emailed a copy of [DLI's] Petition for Restraining Order, proposed order and supporting documents to [Farm Boy's] publicly available email address: lela@farmboydrivein.com.

CP at 327-28.  As asserted in the AAG's supporting affidavit and according to the time the petition was filed, DLI reportedly advised Farm Boy (via the call with "Ally" and the e-mail to the general e-mail address), less than three hours prior to filing that it would be requesting a TRO.  Further,

---

[5] To avoid confusion, we reproduce the paragraphs with original numbering used by DLI; we recognize the numbering is not sequential.

the petition and the AAG's supporting affidavit did not state the reasons why formal notice should not be required in issuing the TRO, such that a TRO should issue ex parte.

On December 16, the trial court issued a TRO, ex parte and without hearing, which directed Farm Boy to comply with the OIR. The court also ordered Farm Boy to appear and show cause why the TRO should not be continued in full force and effect pending final determination of the action. The court set the hearing for December 22.

B.      December 22 Show Cause Hearing

On December 22, Farm Boy's counsel appeared at the show cause hearing and requested a continuance, which the court granted.

The court clarified, and Farm Boy's counsel agreed, that the TRO remained in full force and effect until the continued hearing occurred. DLI did not object to the continuance. The show cause hearing was continued to January 5, 2021.

C.      December 29 Contempt Order

Lyndsey Banks, a regional compliance manager for DLI, stated that on December 19 a DOSH representative drove past Farm Boy and observed that it was open and providing indoor dine-in services.

Banks stated that on December 22 they also drove past Farm Boy. Banks observed unmasked individuals seated inside the restaurant and that the parking lot was full.

On December 23, Banks again drove past Farm Boy and observed that the parking lot was full. Banks stated that the restaurant was open and that there were unmasked individuals sitting at tables inside the restaurant.

55806-8-II

DLI then filed a motion for an order of contempt based on Farm Boy's alleged violations of the TRO. DLI requested the court to impose sanctions in the amount of $2,000 per day, from December 17 through December 29, the date of the contempt hearing.

On December 28, Farm Boy filed numerous declarations from its employees and customers. Many of these declarations blatantly admit that Farm Boy provided indoor dine-in services while the court's TRO was effective.

On December 29, the contempt hearing occurred. Farm Boy's counsel raised issue with the timeliness of notice for the contempt hearing and requested a continuance. The court denied the request.

The court found that Farm Boy had continued to provide indoor dine-in services in violation of the TRO. Accordingly, the court entered an order of contempt and imposed sanctions on Farm Boy in the amount of $2,000 per day from December 18 to 29. The order stated that sanctions continued until Farm Boy complied with the TRO or unless otherwise ordered by the court. The order also stated that Farm Boy could purge its contempt by presenting evidence that it has ceased providing indoor dine-in services.

D. January 5 Show Cause Hearing and Order Extending the TRO

On December 31, Farm Boy responded to the order to show cause and TRO. It argued that (1) there was insufficient evidence of a threat to health or safety to justify the TRO, (2) other establishments presented a greater threat to health or safety and remained open, and (3) the mitigation efforts performed by Farm Boy were sufficient to prevent any threat to health or safety.

On January 1, 2021, Farm Boy posted a flyer on its Facebook page advertising a rally on January 4 at the restaurant. The flyer stated "WE DO NOT FOLLOW UNCONSTITUTIONAL COURT ORDERS." CP at 494. The flyer continues, "Join us for our civil disobedience and grand

9

55806-8-II

re-opening at Farm Boy in defiance of these unconstitutional court orders. . . . Our next court date is 1/5/21 (the next day), will they put us in jail?"[6] CP at 494.

On January 5, the show cause hearing occurred. The trial court stated that the issue was whether to continue the effect of the TRO pending further proceedings, which both parties agreed was the correct posture of the case. DLI argued that the TRO should remain in place because Farm Boy had no intention of complying with that order. Farm Boy advanced the same arguments made in its December 31 response brief.

The court ordered that the TRO remain in place until otherwise ordered or until Farm Boy was permitted to resume offering indoor dine-in services pursuant to the Governor's emergency proclamations. The court set a hearing on DLI's request for a preliminary injunction for January 19.

E.      February 9 Contempt Order and Order Granting Preliminary Injunction[7]

Bryan Templeton, a fraud specialist who was assigned to manage the enforcement of DLI's COVID-19 rules, stated in a declaration that on January 7 two of his staff members visited Farm Boy to determine whether it continued to provide indoor dine-in services. Templeton stated that the DLI staff members observed at least 12 people in the restaurant eating food at tables and 3 employees working without masks. DLI then filed a motion for a second order of contempt.

On January 13, Farm Boy filed a response to the preliminary injunction and moved to dismiss the case and vacate the TRO on constitutional grounds. Many constitutional provisions were referenced in passing without substantive argument. However, Farm Boy did provide

---

[6] It is unknown who actually made the post.

[7] Farm Boy refers to this as the February 8 order because the trial court judge signed the order on the 8th. But we refer to it as the February 9 order because the order was filed on February 9.

55806-8-II

argument as to whether the TRO violated the right to hold specific private employment and violated the equal protection clause. Farm Boy also contested DLI's scientific evidence.

On January 15, Farm Boy submitted the declaration of Alejandra Hamblin, its manager. For the first time, Farm Boy denied providing indoor dine-in services.

On January 19, the trial court held a consolidated hearing on the preliminary injunction and DLI's second contempt motion. The court granted the preliminary injunction and held Farm Boy in contempt for a second time.

On February 9, the court entered an order memorializing its January 19 rulings. Specifically, the court granted DLI's request for a preliminary injunction (extending the TRO) and found Farm Boy in contempt of the TRO from December 18, 2020, to January 7, 2021. As a result, the court ordered Farm Boy to pay $42,000 in sanctions. Like the first contempt order, the court permitted Farm Boy to purge its contempt by presenting evidence of compliance with the TRO or preliminary injunction.

F.      Previous Appeals

On February 10, Farm Boy appealed the TRO and December 29 contempt order. *See* Notice of Appeal to Court of Appeals, Division II, *Dep't of Lab. & Indus. v. Fowler*, No. 55463-1-II (Wash. Ct. App. Feb. 10, 2021). On March 18, Farm Boy appealed the February 9 order, which granted the preliminary injunction and second contempt motion, and imposed $42,000 in sanctions. *See* Supplement to Notice of Appeal to Court of Appeals, Division II, *Dep't of Lab. & Indus. v. Fowler*, No. 55463-1-II (Wash. Ct. App. Mar. 18, 2021).

On April 5, a commissioner of this court ruled that Farm Boy's notice of appeal was untimely as to the TRO and December 29 contempt order. *See* Commissioner's Ruling, *Dep't of Lab. & Indus. v. Fowler*, No. 55463-1-II (Wash. Ct. App. Apr. 5, 2021). The commissioner also

11

ruled that Farm Boy's supplemental notice of appeal was untimely as to the February 9 orders discussed above. *See* Commissioner's Ruling, No. 55463-1-II, at 1. Farm Boy did not move to modify the commissioner's ruling and a certificate of finality was issued.

G.      This Appeal

On February 8, Farm Boy filed a motion to dismiss and vacate all prior orders under CR 4, 12(b)(2), (4), (5), and CR 60(b)(5). On February 22, Farm Boy filed a supplemental motion to dismiss and vacate. Farm Boy argued that the trial court lacked personal jurisdiction over it, that DLI's evidence was insufficient, and the previous orders and applicable WAC violated various constitutional provisions. Farm Boy also argued that the ex parte TRO was void because it violated due process by not meeting the requirements of CR 65(b). Farm Boy also contended that the contempt orders were void.

DLI opposed the motion, arguing that the trial court had personal jurisdiction over Farm Boy and, in the alternative, that Farm Boy waived such an argument. DLI also asked the court to reject Farm Boy's remaining arguments pertaining to: the TRO, the contempt orders, validity of the Governor's proclamation and applicable WACs, sufficiency of the evidence, and due process claims.

On April 30, the trial court denied Farm Boy's motion to dismiss and vacate all prior orders. However, due to Thurston County entering Phase II of the Governor's statewide reopening plan, which permitted limited indoor dine-in services, the court dismissed its prior injunctions effective February 1. The court clarified that all injunctive relief ordered in the case was effective at all times relevant to the court's orders. It is from this order that Farm Boy now appeals.

55806-8-II

ANALYSIS [8]

Farm Boy argues that the trial court erred in denying its motion to dismiss and vacate all prior orders because those orders are void. We agree in part.

I. STANDARD OF REVIEW

"This court generally reviews a trial court's decision to deny a motion to vacate judgment for abuse of discretion." *Castellon v. Rodriguez*, 4 Wn. App. 2d 8, 14, 418 P.3d 804 (2018). However, there is a nondiscretionary duty on the trial court to vacate a void judgment. *Servatron, Inc. v. Intelligent Wireless Prod., Inc.*, 186 Wn. App. 666, 679, 346 P.3d 831 (2015). We review de novo whether a judgment is void. *Castellon*, 4 Wn. App. 2d at 14.

"CR 60(b)(5) mandates the court [to] vacate a void judgment upon motion of a party, irrespective of the lapse of time." *In re the Marriage of Persinger*, 188 Wn. App. 606, 609, 355 P.3d 291 (2015). "Where a court lacks jurisdiction over the parties or the subject matter, or lacks the inherent power to make or enter the particular order, its judgment is void." *In re Estates of Smaldino*, 151 Wn. App. 356, 366, 212 P.3d 579 (2009); *Dike v. Dike*, 75 Wn.2d 1, 7, 448 P.2d 490 (1968). "Our review of a CR 60(b) decision is limited to the trial court's decision, not the underlying order the party seeks to vacate." *Persinger*, 188 Wn. App. at 609.

---

[8] Farm Boy assigns error to essentially all of the trial court's prior orders on appeal. But Farm Boy's notice of appeal only seeks review of the trial court's April 30 order. Because the April 30 order is the subject of this appeal, and because Farm Boy's arguments on appeal revolve around voidness of the court's prior orders, the appropriate standard of review here is limited to reviewing whether those orders are void under CR 60(b)(5). Accordingly, we limit our inquiry to that singular question.

55806-8-II

II.     CLAIM PRECLUSION

As an initial matter, DLI argues that res judicata bars Farm Boy from challenging the trial court's TRO, two contempt orders, and order granting the preliminary injunction because this court previously ruled that the appeal of those orders was untimely.  We disagree.

"Res judicata, also called claim preclusion, applies when a plaintiff's claim against a party has been dismissed by final judgment in one action and the plaintiff asserts the same claim against the same party *in a subsequent action*."  *Shandola v. Henry*, 198 Wn. App. 889, 902, 396 P.3d 395 (2017).  In other words, res judicata applies when a previous claim for which there was a final judgment on the merits and the current claim are so similar that the current claim could have been litigated in the former action.  *Storti v. Univ. of Wash.*, 181 Wn.2d 28, 40, 330 P.3d 159 (2014).  We review de novo whether res judicata applies.  *Emeson v. Dep't of Corr.*, 194 Wn. App. 617, 626, 376 P.3d 430 (2016).

Here, Farm Boy has not filed a subsequent action—there is no second claim.  Farm Boy filed a CR 60(b)(5) motion in the *same action*.  Therefore, an essential element of res judicata is missing.  DLI's assertion that a CR 60(b) motion is barred by res judicata is unsupported by citation to authority and is otherwise without merit.  "While res judicata is meant to ensure the finality of judgments, CR 60(b) is concerned with when finality must give way in order for justice to be done."  *Shandola*, 198 Wn. App. at 902.  Res judicata does not apply to the CR 60(b) motion in this case.

DLI asserts that Farm Boy's prior unsuccessful appeal of the injunction and contempt orders bar relitigation of those orders here.  However, the prior ruling of the court determined that the appeal of those orders was untimely.  Significantly, we did not reach the merits of those claims.  The decision lacks preclusive effect.  *Fluke Cap. & Mgmt. Servs. Co. v. Richmond*, 106 Wn.2d

14

614, 620, 724 P.2d 356 (1986). Moreover, while that appeal was untimely, the appeal of the CR 60(b) motion before us now was timely filed. DLI's argument fails.

III.    VALIDITY OF THE TRO

Farm Boy argues that the TRO is void because it was issued in violation of procedural due process requirements—namely, DLI and the trial court's failure to adhere to the requirements of CR 65(b). In response, DLI argues that CR 65(b) does not apply because the legislature prescribed a specific basis for obtaining injunctive relief under RCW 49.17.170. In reply, Farm Boy argues that CR 65 applies because it procedurally conflicts with RCW 49.17.170. We conclude in the narrow context set forth here that the TRO is void.

A.    Legal Principles

Article 1, section 3 of the Washington Constitution provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law." The Fourteenth Amendment of the United States Constitution similarly provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."

"Ex parte TROs are governed by CR 65(b)." *Smaldino*, 151 Wn. App. at 366. "A [TRO] is an order entered without notice, or after informal notice. It operates for a period not to exceed 14 days unless extended for good cause. In contrast, a preliminary injunction is an order entered after formal notice to the opposing party. It operates from issuance until trial." *Fisher v. Parkview Props., Inc.*, 71 Wn. App. 468, 474, 859 P.2d 77 (1993) (internal citations omitted); *see* CR 65(a), (b).

The first sentence of CR 65(b) reads,

A [TRO] may be granted without written or oral notice to the adverse party or the adverse party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or her or his attorney

15

can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the applicant's claim that notice should not be required.

"The first sentence in CR 65(b) sets forth the prerequisites for issuance of a TRO without notice (to wit, the showing of immediate need and inability to give timely notice)." *Smaldino*, 151 Wn. App. at 367. "[T]hese prerequisites exist to ensure that parties are afforded minimum due process protections." *Id*.

As early as 1900, our Supreme Court held that a trial court "exceed[s] its powers" by granting an ex parte TRO "without notice, and without any showing of necessity therefor, and in failing to make any provision for notice and an opportunity for [a] hearing." *In re Groen*, 22 Wash. 53, 54, 60 P. 123 (1900). There, the court held that the ex parte TRO at issue was void based on the following deficiencies:

> No necessity for an injunctive order is set forth in the complaint, nor is there any prayer therein for such an order. The order was made without any notice whatever to the defendant; *and the affidavit on which it was made does not set forth any reason why the order should issue without notice*, nor does it contain any showing of emergency whatever. The order itself makes no provision for a hearing, and no return day was inserted.

*Id*. (emphasis added).

Likewise, Division One of this court has stated that "[a]n ex parte TRO issued absent necessity and without provision for notice and opportunity to be heard is . . . void." *Smaldino*, 151 Wn. App. at 367; *see In re Marriage of Maxfield*, 47 Wn. App. 699, 704, 737 P.2d 671 (1987) ("If procedural safeguards are inadequate, a court lacks jurisdiction over the defendant and cannot enter a valid order against him."); *see also In re Marriage of Ebbighausen*, 42 Wn. App. 99, 102, 708 P.2d 1220 (1985) ("Judgments entered in a proceeding failing to comply with the procedural due process requirements are void.").

16

55806-8-II

Under RCW 49.17.170, the legislature granted DLI the authority to petition the superior court for injunctive relief to enforce its duly issued OIRs. The statute provides in relevant part that,

> (1) In addition to and after having invoked the powers of restraint vested in the director as provided in RCW 49.17.130 the superior courts of the state of Washington shall have jurisdiction upon petition of the director, through the attorney general, to enjoin any condition or practice in any workplace from which there is a substantial probability that death or serious physical harm could result to any employee immediately or before the imminence of such danger can be eliminated through the enforcement procedures otherwise provided by this chapter.
> . . . .
> (2) Upon the filing of any such petition the superior courts of the state of Washington shall have jurisdiction to grant such injunctive relief or [TRO] pending the outcome of enforcement proceedings pursuant to this chapter, except that no [TRO] issued without notice shall be effective for a period longer than five working days.

RCW 49.17.170.

The parties' arguments require us to determine the extent to which each of CR 65(b) and RCW 49.17.170's provisions apply. "[I]f a statute appears to conflict with a court rule, this court will first attempt to harmonize them and give effect to both. If they cannot be harmonized, the court rule will prevail in procedural matters and the statute will prevail in substantive matters." *Putman v. Wenatchee Valley Med. Ctr., P.S.*, 166 Wn.2d 974, 984, 216 P.3d 374 (2009) (internal citations omitted); *see also* CR 65(e) ("These rules are intended to supplement and not to modify any statute prescribing the basis for obtaining injunctive relief. These rules shall prevail over statutes if there are procedural conflicts."). Our Supreme Court has explained the difference between substance and procedure: "Substantive law 'creates, defines, and regulates primary rights,' while procedures involve the 'operations of the courts by which substantive law, rights, and remedies are effectuated.'" *Putman*, 166 Wn.2d at 984 (internal quotation marks omitted) (quoting *City of Fircrest v. Jensen*, 158 Wn.2d 384, 394, 143 P.3d 776 (2006)).

17

B.      Notice

DLI argues that it gave notice to Fowler, which rendered CR 65(b) inapplicable.  CR 65(b) applies only if a TRO is "granted without written or oral notice to the adverse party or the adverse party's attorney."  But the record shows that DLI did not give notice to the adverse party in this case: the Fowlers.  DLI did speak with a person named "Ally" at Farm Boy and e-mailed the pleadings to a general Farm Boy e-mail address, but DLI does not point to anywhere in the record where either actual written or oral notice was ever provided to the Fowlers themselves, be it formal or informal.

Accordingly, DLI was required to meet the stringent procedural requirements of CR 65(b).C.

C.      The TRO is Void

1.      Substantive Injunction Standard

Farm Boy argues that the TRO is void because the trial court incorrectly applied the injunction standard of RCW 49.17.170(1) rather than CR 65(b)(1).  We disagree with Farm Boy's reasoning on this point.

The showing required by RCW 49.17.170(1) and CR 65(b)(1) are clearly in conflict because section .170 requires DLI to show "*a substantial probability that death or serious physical harm could result* to any employee immediately or before the imminence of such danger can be eliminated through the enforcement procedures otherwise provided by this chapter," RCW 49.17.170(1) (emphasis added), while CR 65(b)(1) requires it to show "*immediate and irreparable*

18

55806-8-II

*injury, loss, or damage will result* to the applicant."[9]  (Emphasis added.)  In other words, the

alleged injury showing for a TRO under RCW 49.17.170(1) is a lower bar than that under CR

65(b)(1).  Because these differing injunction standards cannot be harmonized, we must determine

whether the standard is substantive or procedural.

The conflicting language in these provisions is substantive in nature because it does not

involve the operations of the courts, but instead defines on what basis the government can interfere

with Farm Boy's business operations—a substantive matter.  Because the differences are

substantive, the injury standard in RCW 49.17.170(1) prevails and replaces the more stringent CR

65(b)(1) injury standard.  Accordingly, the trial court did not err in applying the substantive

statutory injunction standard.  But there is trouble ahead.

2.      DLI Did Not Allege and the Trial Court Did Not
        Decide that Procedural Prerequisites to CR 65(b) No-Notice TRO were met.

Next, Farm Boy argues that the TRO is void because the trial court lacked the power to

issue an ex parte TRO absent DLI certifying the efforts which had been made to give notice and

the emergent reasons why notice should not be required.  We agree that counsel for DLI did not

certify the reasons supporting their claim that notice should not be required.

---

[9] However, we do note that there is no conflict between RCW 49.17.170(1) and CR 65(b)(1) with regard to who must (allegedly) be injured.  In this context, harm to "any employee" in the state is deemed harm to DLI (the applicant) because the legislature delegated the authority to DLI to enforce its rules or regulations against employers, which are meant to protect the health and safety of Washington's workers.  RCW 49.17.010; .040, .130(1), .170(1).  In other words, business practices that carry the substantial probability of bringing death or serious physical harm to Washington's workers would in turn harm DLI's purpose as an agency—the applicant.

19

Here, CR 65(b)(2) does not conflict with RCW 49.17.170. Nothing in RCW 49.17.170 purports to dispense[10] with the CR 65(b)(2) requirement conditioning the issuance of an ex parte TRO upon an applicant's certification "to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting his claim that notice should not be required," which would demonstrate the need to proceed ex parte without notice. So, there is no conflict. Because there is no conflict, we need not determine whether this certification requirement is substantive or procedural. And because CR 65 is "intended to supplement and not to modify any statute prescribing the basis for obtaining injunctive relief," the CR 65(b)(2) requirements apply.

But there are additional, important reasons why CR 65(b)(2) applies. As explained above, the first sentence of CR 65(b) sets forth the prerequisites for the issuance of a TRO and "ensure[s] that parties are afforded *minimum* due process protections." *Smaldino*, 151 Wn. App. at 367 (emphasis added). The legislature may not simply dispense with procedural due process requirements by statute. *See Olympic Forest Prods., Inc. v. Chaussee Corp.*, 82 Wn.2d 418, 435, 511 P.2d 1002 (1973) ("An otherwise legitimate exercise of the police power must fall if it violates specific constitutional requirements.").

In this case, the AAG certified to the court, in writing, the efforts which had been made to attempt notice of the TRO to Farm Boy.[11] However, the petition and the AAG's supporting affidavit wholly fail to state the reasons why notice should not be required. CR 65(b)(2). This failure to show why the proceeding must go forward, without notice, and without the other party

_____

[10] Even if the legislature purported to dispense with procedural requirements of CR 65(b), the legislature lacks the ability to eliminate procedural requirements of the courts. *Putman*, 166 Wn.2d at 984-85.

[11] We note again, in spite of DLI's assertion, there is no evidence that actual notice was ever provided to the Fowlers; CR 65(b)(2) applies.

20

present, is particularly troubling here because the phone contact with the Farm Boy restaurant employee (not the appellant owners) was provided less than three hours before the petition was submitted for ex parte consideration. This is precisely the abuse that CR 65(b) proceedings are subject to and precisely the reason that compliance with the rule is required.

Absent a showing by DLI of the need to proceed ex parte and without proper notice, and a trial court ruling approving thereof, the trial court lacked the authority to issue the TRO. *Groen*, 22 Wash. at 54; *Smaldino*, 151 Wn. App. at 367. Therefore, in this particular CR 65(b) context only, we hold that the TRO is void. Accordingly, we reverse the trial court's order denying Farm Boy's motion to dismiss and vacate the TRO under CR 60(b)(5).[12]

IV.    THE DECEMBER 29 AND FEBRUARY 9 CONTEMPT ORDERS

Farm Boy argues that the trial court erred by denying its motion to dismiss and vacate the December 29 and February 9 contempt orders because the TRO was void. Farm Boy contends that it cannot be held in contempt of a void order. We agree.

Contempt of court is the intentional disobedience of any lawful judgment, decree, order, or process of the court. RCW 7.21.010(1)(b); *In re Marriage of Humphreys*, 79 Wn. App. 596, 599, 903 P.2d 1012 (1995). "It is . . . well settled that disobedience of, or resistance to a void order, judgment, or decree is not contempt." *Dike*, 75 Wn.2d at 7-8. A contempt order may be vacated if the underlying order is void. *Maxfield*, 47 Wn. App. at 704-06.

Here, Farm Boy was twice held in contempt based on violating the trial court's TRO. However, as explained above, the TRO was void because it was issued in violation of procedural

---

[12] In holding that the no-notice ex parte TRO is void, we limit our holding to the specific CR 65(b) context.

21

due process requirements. Because disobedience of a void order is not contempt, we hold that the trial court erred by denying Farm Boy's motion to dismiss and vacate the contempt orders.[13]

V.      PRELIMINARY INJUNCTION

Farm Boy appears to argue that the February 9 order granting DLI's request for a preliminary injunction was void because the Governor's proclamation was no longer in effect when the trial court issued that order. We hold that the issue is moot and decline to address Farm Boy's argument.

Regardless of whether the trial court erred in denying Farm Boy's motion to vacate the preliminary injunction, issues related to it are moot and only relevant in these proceedings to the extent the injunction is the basis for contempt judgments. An appeal is moot if "the matter is 'purely academic' such that the court cannot provide effective relief." *Center for Biological Diversity v. Dep't of Fish & Wildlife*, 14 Wn. App. 2d 945, 985, 474 P.3d 1107 (2020) (quoting *City of Sequim v. Malkasian*, 157 Wn.2d 251, 258, 138 P.3d 943 (2006)). When an appellant has already obtained the requested relief, an appeal is technically moot. *In re Det. of Nelson*, 2 Wn. App. 2d 621, 628, 411 P.3d 412 (2018).

Here, Farm Boy already obtained its requested relief, i.e. termination of the injunction, because the April 30 order stated that the preliminary injunction was no longer effective after February 1. Additionally, no contempt orders flowed from the court's preliminary injunction. Because we can no longer provide effective relief in the form of terminating the injunction, the issue of whether the preliminary injunction is void is moot. Accordingly, we decline to address the issue.

---

[13] Because the contempt orders cannot stand, we need not address Farm Boy's argument that the trial court erred in discontinuing the action because it had a right to a trial to purge its contempt.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

55806-8-II

CONCLUSION

We reverse the trial court's April 30, 2021 order denying Farm Boy's motion to dismiss and vacate the December 16, 2020 ex parte TRO and the December 29, 2020 and February 9, 2021 contempt orders. We also remand for the trial court to vacate the December 29, 2020 and February 9, 2021 contempt orders.

_____
Veljacic, J.

We concur:

_____
Maxa, P.J.

_____
Lee, J.

23