**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CALLUM HERDSON, an individual, | No. 83701-0-I |
| Respondent, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| RICHARD FORTIN, ROBERT ENSLEN, XCAR, INC., FTW SERVICES, INC., XCAR REMARKETING, INC., CROSSBORDER VEHICLE SERVICES, INC., and CROSSBORDER VEHICLES SALES, LTD., | |
| Appellants. | |

HAZELRIGG, A.C.J. — Richard Fortin, Robert Enslen, XCar, Inc., FTW Services, Inc., XCar Remarketing, Inc., Crossborder Vehicle Services, Inc., and Crossborder Vehicle Sales, Ltd. appeal from findings of fact and conclusions of law entered after a bench trial, as well as an order appointing special fiscal agents and a forensic auditor. Because the court's findings as to minority shareholder oppression are supported by substantial evidence and the court did not abuse its discretion in fashioning an equitable remedy, we affirm. However, we reverse the court's order appointing special fiscal agents and a forensic auditor due to its failure to comply with RAP 7.2.

FACTS

Callum Herdson was hired as president of XCar, Inc. in 2014 and given one-third of its stock as common, non-voting shares. Richard Fortin and Robert Enslen own the remaining preferred, voting shares equally. Herdson received a share of profits in addition to his salary, as did several other employees.[1] Fortin and Enslen also own and operate several other related companies: Crossborder Vehicle Services, Inc., Crossborder Vehicle Sales, Ltd., XCar Remarketing, Inc., and FTW Services, Inc. (collectively, "Crossborder-owned companies"). XCar is not a subsidiary of any of these companies.

Herdson was terminated from XCar in February 2017 but retained his shares. Herdson subsequently filed suit against Fortin, Enslen, and their various other business entities (collectively, Fortin), and alleged a number of claims, including failure to distribute dividends to which he was entitled, breach of fiduciary duties, and minority shareholder oppression. Herdson sought monetary damages, and several forms of injunctive relief, including an order to require either the purchase of Herdson's shares or the dissolution of XCar. After Herdson abandoned some of his original claims, the parties proceeded to a bench trial. On January 13, 2022, the court entered extensive findings of fact and conclusions of law (FFCL). The Court expressly found Herdson proved Fortin and Enslen had engaged in minority shareholder oppression, dismissed all

---

[1] Herdson testified that he was paid dividends that ceased after his termination from XCar, while evidence submitted by Fortin suggested Herdson was only paid profit sharing during his employment, in addition to his salary, which then ceased after he was terminated, and XCar in fact never declared dividends. The trial court found that "[t]he agreement between Herdson, Fortin, and Enslen, included an agreement that each owner would receive 1/3 of XCar's after-tax net profits" but the court never explicitly characterized these profits as dividends.

of Herdson's remaining claims except regarding minority shareholder oppression, rejected Herdson's desired remedy of the judicial dissolution of XCar, and appointed a receiver in lieu of dissolving the company.

Fortin appealed on February 11, 2022, and a perfection letter was issued by this court on February 18, 2022. On February 25, 2022, after this court accepted review, the trial court entered an order appointing special fiscal agents and a forensic auditor "in lieu of appointing a traditional receiver" as an "exercise[] [of] its discretion." Fortin filed an amended notice of appeal designating the February 25 order along with the FFCL.

## ANALYSIS

### I. Appealability

Herdson contends that this appeal should be dismissed as there is no basis for an appeal as a matter of right or for discretionary review. Parties may appeal from "[t]he final judgment entered in any action or proceeding." RAP 2.2(a)(1). Additionally, under RAP 2.2(a)(3), "[a]ny written decision affecting a substantial right in a civil case that in effect determines the action and prevents a final judgment or discontinues the action" may be appealed. "We look to the effect of a judgment to determine whether it is appealable," and the substance of a document, rather than the title, controls. Wachovia SBA Lending, Inc. v. Kraft, 165 Wn.2d 481, 487, 200 P.3d 683 (2009); Rhodes v. D & D Enters., Inc., 16 Wn. App. 175, 177, 554 P.2d 390 (1976). "[D]etermination of finality is a matter of substance and not form." Gazin v. Hieber, 8 Wn. App. 104, 113, 504 P.2d 1178 (1972). "A final judgment is a judgment that ends the litigation, leaving

nothing for the court to do but execute the judgment." Anderson & Middleton Lumber Co. v. Quinault Indian Nation, 79 Wn. App. 221, 225, 901 P.2d 1060 (1995). It "concludes the action by resolving the plaintiff's entitlement to the requested relief." Bank of Am., NA v. Owens, 153 Wn. App. 115, 126, 221 P.3d 917 (2009), rev'd in part on other grounds, 173 Wn.2d 40, 266 P.3d 211 (2011).

Here, the court resolved all of Herdson's claims on the merits. It concluded that Herdson met his burden to demonstrate minority shareholder oppression as a matter of law and dismissed all other claims. The trial court determined that Fortin was not entitled to immunity under the business judgment rule, and that Herdson was entitled to relief because he had "established a probable right in the XCar profits from the time [he] became an owner . . . through the present." This concluded the action by resolving Herdson's entitlement to relief, leaving nothing for the court to do but execute its judgment after calculating the amount owed to Herdson as the remedy. As such, the document entered at the conclusion of trial, captioned "Court's Findings of Fact and Conclusions of Law," is appealable as a matter of right.

After we accepted review of the FFCL, Fortin filed an amended notice of appeal in this case that added the February 25 order, appointing special fiscal agents and a forensic auditor in lieu of the receiver previously ordered, to the orders on review. While the February 25 order is not appealable as a matter of right, we exercise our authority to grant discretionary review as it is related to and

impacts the FFCL under RAP 2.3(b)(2).[2]  See City of Bothell v. Barnhart, 156 Wn. App. 531, 538 n.2, 234 P.3d 264 (2010) (explaining that the appellate court has the authority to determine the scope of discretionary review), aff'd, 172 Wn.2d 223, 257 P.3d 648 (2011).

II.      Substantial Evidence

In this appeal, Fortin assigns error to numerous findings of fact.  When considering such a challenge, we "review findings of fact for substantial evidence" and "conclusions of law de novo."  Blackburn v. Dep't of Soc. & Health Servs., 186 Wn.2d 250, 256, 375 P.3d 1076 (2016).  "Substantial evidence to support a finding of fact exists where there is sufficient evidence in the record 'to persuade a rational, fair-minded person of the truth of the finding.'"  Hegwine v. Longview Fibre Co., Inc., 162 Wn.2d 340, 353, 172 P.3d 688 (2007) (quoting In re Est. of Jones, 152 Wn.2d 1, 8, 93 P.3d 147 (2004)).  We "view the evidence in the light most favorable to the prevailing party" and do not "reassess the credibility of trial court witnesses."  Garza v. Perry, __ Wn. App. 2d __, 523 P.3d 822, 834 (2023).

As a preliminary matter, Fortin urges this panel to look to the trial court's oral ruling, rather than its written order.  "When findings are incomplete" or ambiguous, "appellate courts may look to the trial court's oral decision to interpret the judgment."  City of Lakewood v. Pierce County, 144 Wn.2d 118, 127, 30 P.3d 446 (2001).  Fortin raises this issue for the first time in its reply brief, does not

---

[2] "A notice of appeal of a decision which is not appealable will be given the same effect as a notice for discretionary review."  RAP 5.1(c).

cite any authority in support, and does not explain how the oral ruling sheds light on the allegedly contradictory conclusions of law. Accordingly, we decline that invitation and focus our analysis on the court's written ruling.

Several of the findings Fortin challenges are solely credibility determinations made by the trial court, or explicitly rest on the court's findings on credibility; we do not review such determinations. As such, we decline to evaluate findings: 16, 19, 22, 39-45, 52, 60, 62, and 70-71. Several other findings are set out in Fortin's assignments of error but no further argument is provided in briefing. These challenges are abandoned[3] and, as such, we decline to reach findings: 26-29, 36, and 53-58. We further decline to review finding 37 as the nature of Fortin's challenge is unclear—the assignment of error merely states, "this finding fails to acknowledge that XCar's accounting practices."

The remaining findings Fortin sets out in the assignments of error (38, 47, 50-51, 59, 61, 63-64, 67-69, 72-74) are each supported by substantial evidence. Finding 38, that Fortin failed to ensure XCar received market rate fees for arms-length transactions, is supported by Fortin's admission in his deposition. Finding 47, that Fortin obscured XCar's profitability and shifted profits away, is supported by Exhibit 18 and trial testimony by Nick Nicholson, chief financial officer for all the Crossborder-owned companies and XCar. Finding 50, that Fortin and Enslen continue to receive management fees to draw profits from XCar is supported by Nicholson's and Fortin's testimony at trial. Viewing the evidence adduced at trial in the light most favorable to Herdson, Fortin fails to meet its burden to

---

[3] An assignment of error not argued in a party's brief is abandoned. Pappas v. Hershberger, 85 Wn.2d 152, 153, 530 P.2d 642 (1975).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

demonstrate that the trial court's finding that these management fees were used to draw profits, is unsupported by substantial evidence. Our sole inquiry when presented with this sort of appellate challenge is whether substantial evidence supports the findings made by the trial court; "we will not substitute our judgment for the court's" even if this court might have reached a different result. Parkridge v. City of Seattle, 89 Wn.2d 454, 464, 573 P.2d 359 (1978). Findings 51 and 59, that Fortin did not conduct a transfer pricing analysis to ensure that the management fees were market rate, as required, are both supported by Exhibit 45 and Nicholson's deposition testimony. Findings 61, 63, and 64, that, by avoiding a transfer pricing analysis, Fortin failed to ensure XCar's profits were accurately captured and failed to ensure transactions were at arm's length, are supported by Nicholson's and Fortin's deposition testimony. Findings 67-69, that Fortin applied for a Paycheck Protection Program (PPP) loan and falsely claimed the ownership of XCar was held equally by only Fortin and Enslen, are supported by Exhibit 59. Finding 72, that XCar's profitability was clouded by obscuring profits, is a factual conclusion supported by evidence set out in testimony and exhibits that Fortin retroactively changed costs between companies to shift taxable net income, as reported to the Internal Revenue Service (IRS), and thus drastically changed the profits (and, therefore, tax liability). The court further found that Fortin purposefully concealed XCar's profits and financially manipulated XCar's accounting records in a later, unchallenged, finding. Finding 73, that some of XCar's profits were shifted to Crossborder-owned companies and withdrawn by Fortin and Enslen, is supported by Exhibits 12, 18, and

Enslen's testimony at trial. Finding 74, that Fortin and Enslen paid themselves constructive dividends, is supported by testimony at trial by Herdson, Fortin, and Enslen. While there is conflicting testimony as to whether the management fees were constructive dividends, the court found the defense witnesses to not be credible in this regard, and we do not reweigh the evidence on appeal.[4] Without a more specificity from Fortin's challenge, this finding is sufficiently supported. In turn, the challenged findings discussed herein support the trial court's broader conclusions of law that Herdson demonstrated minority shareholder oppression.

III.    Minority Shareholder Oppression and Statutory Remedies

Fortin asserts the court erred in a variety of ways with regard to its ultimate conclusion that Herdson demonstrated minority shareholder oppression and to the remedy applied.[5] We disagree and affirm the trial court.

"It is a recognized principle that majority shareholders 'must, at all times, exercise good faith toward the minority stockholders.'" Real Carriage Door Company, Inc. ex rel. Rees v. Rees, 17 Wn. App. 2d 449, 458, 486 P.3d 955 (quoting Hay v. Big Bend Land Co., 32 Wn.2d 887, 897, 204 P.2d 488 (1949)), review denied, 198 Wn.2d 1025 (2021). One potential remedy for wronged minority shareholders authorized under our statutory scheme is for the superior court to dissolve a corporation "[i]n a proceeding by a shareholder if it is established that . . . [t]he directors or those in control of the corporation have

---

[4] Mangan v. Lamar, 18 Wn. App. 2d 93, 95, 496 P.3d 1213 (2021).

[5] At oral argument before this court, Fortin appears to have conceded that minority shareholder oppression occurred. Wash. Court of Appeals oral argument, Herdson v. Fortin, No. 83701-0-I (Mar. 9, 2023), at 6 min., 15 sec., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-202303140.

- 8 -

acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent."

RCW 23B.14.300(2)(b).   Because courts are reluctant to dissolve corporations,

courts "rigorously require[] that plaintiffs meet their burden."  Scott v. Trans-Sys.,

Inc., 148 Wn.2d 701, 712, 64 P.3d 1 (2003).   Once the plaintiff demonstrates

illegal, oppressive, or fraudulent conduct, "the burden shifts to the majority

shareholder or shareholders to show there were legitimate business justifications

for the conduct."  Id. at 709.   In addition to dissolving a company, "courts also

may consider alternative remedies that are less severe than dissolution."  Real

Carriage Door, 17 Wn. App. 2d at 458.

A.      Determining Whether Minority Shareholder Oppression Occurred

"Courts have adopted two tests for determining oppressive conduct toward

minority shareholders under RCW 23B.14.300(2)(b)."  Real Carriage Door, 17

Wn. App. 2d at 458.  The "tests are not mutually exclusive and one or both may

be used in the same case."  Scott, 148 Wn.2d at 711.  The first test focuses on

the reasonable expectations of the minority shareholder; oppressive conduct is

that which violates "'those spoken and unspoken understandings on which the

founders of a venture rely when commencing the venture.'"  Real Carriage Door,

17 Wn. App. 2d at 458 (internal quotation marks omitted) (quoting Scott, 148

Wn.2d at 711).  This test "is most appropriate in situations where the complaining

shareholder was one of the original participants in the venture—one who would

have committed capital and resources."  Scott, 148 Wn.2d at 711.  The second

test analyzes whether there was:

> "burdensome, harsh and wrongful conduct; a lack of probity and fair dealing in the affairs of a company to the prejudice of some of its members; or a visible departure from the standards of fair dealing, and a violation of fair play on which every shareholder who entrusts his money to a company is entitled to rely."

Real Carriage Door, 17 Wn. App. at 458-59 (internal quotations marks omitted) (quoting Scott 148 Wn.2d at 711). In Scott, our State Supreme Court quoted an Oregon case that defined oppressive conduct as an "'abuse of corporate position for private gain at the expense of the stockholders,'" and "'the plundering of a close corporation by the siphoning off of profits by excessive salaries or bonus payments.'" Scott, 148 Wn.2d at 713 (internal quotation marks omitted) (quoting Baker v. Com. Body Builders, 264 Or. 614, 629-30, 507 P.2d 387 (1973)). Here, we apply the second test as it is undisputed that Herdson was not an original founder of XCar and that he did not commit any significant capital into the venture, paying just one dollar as his "initial contribution."[6]

The trial court concluded that Fortin engaged in oppressive conduct toward Herdson by hiding financial information related to XCar, "subordinating XCar's independent interests to . . . the interests of their wholly-owned companies" and the personal interests of Fortin and Enslen, "manipulating XCar's finances" through "obscuring XCar's profitability" and "shifting profits from XCar to Crossborder-owned companies," "withdrawing profits from XCar vis-à-vis

---

[6] Fortin urges this panel to follow Roil Energy, LLC v. Edington in our consideration of the issues presented on appeal. 195 Wn. App. 1030 (2016) (unpublished).

However, in addition to the fact that it is an unpublished opinion and, therefore, not controlling authority, Roil Energy considered minority shareholder oppression under Nevada law. Roil Energy, LLC v. Edington, No. 32577-6-III, slip op. at 43 (Wash. Ct. App. Aug. 2, 2016) (unpublished), https://www.courts.wa.gov/opinions/pdf/325776.unp.pdf; see also GR 14.1(a) (stating that unpublished opinions of the Court of Appeals are not binding). For both of these reasons, we reject Roil Energy as inapplicable and instead follow the published cases from our Court of Appeals and Supreme Court that analyze Washington law.

- 10 -

No. 83701-0-I/11

management fees," "not accounting and not distributing 1/3 of XCar's net profits to Herdson," "knowingly and intentionally failing to conduct a transfer pricing analysis," and intentionally misrepresenting information on a PPP loan application "which was done under penalty of perjury."

Fortin argues its acts in managing XCar were not oppressive because it had no duty to pay dividends and no duty to include Herdson in corporate decision-making. While the court did find that Fortin and Enslen had excluded Herdson from decision-making after he was terminated,[7] the court never tied this finding to breach of any fiduciary duty or considered it as a basis for its conclusion on minority shareholder oppression. None of the court's FFCL specific to minority shareholder oppression mention the exclusion of Herdson from decisions, rather it appears in the general findings of fact as finding 27. Fortin concedes the underlying facts in finding 27 and, as such, substantial evidence supports it. No error of law occurred.

Fortin further alleges the court erred in finding oppression based on its refusal to produce financial statements to Herdson after his termination. It contends Herdson failed to follow the proper procedure to request documents under RCW 23B.16.200 and, therefore, it was not oppressive to decline to produce the statements. As a preliminary matter, Fortin relies on an incorrect version of RCW 23B.16.200. Herdson made his requests for records in July 2017, while Fortin relies on the version of the statute that became effective in 2020.

---

[7] Herdson held non-voting shares.

- 11 -

No. 83701-0-I/12

The version of RCW 23B.16.200 in effect at the time of Herdson's request required a corporation to deliver "a copy of the most recent balance sheet and income statement" to a shareholder upon request. Former RCW 23B.16.200(2) (2002). Fortin's other argument, that Herdson failed to comply with subsection (1) of RCW 23B.16.200, is unsupported by law because that procedure was not mandated until the 2020 version of the statute.[8]

In response, Herdson contends he was entitled to the financial documents under RCW 23B.16.020. At the time of Herdson's request, RCW 23B.16.020 permitted a shareholder to inspect and copy certain corporate records, including accounting records, so long as:

> (a) The shareholder's demand is made in good faith and for a proper purpose;
> (b) The shareholder describes with reasonable particularity the shareholder's purpose and the records the shareholder desires to inspect; and
> (c) The records are directly connected with the shareholder's purpose.

Former RCW 23B.16.020(3) (2009).

Fortin argues Herdson was not entitled to specific types of financial documents, but cites no authority for this contention. While Fortin asserts a shareholder has a right to inspect only "certain records," the language of the applicable statute made no such qualification. The express statutory language reflected that a shareholder may inspect "any of the following records . . . [a]ccounting records of the corporation." Former RCW 23B.16.020(2)(b). The statutory scheme did not provide a definition for "accounting records." Black's

---

[8] It is unclear if Fortin's argument that relies on RCW 23B.16.200(1) is a typo, as the attributed quote is found not in RCW 23B.16.200(1) but in RCW 23B.16.020(1).

- 12 -

Law Dictionary defines "accounting," in part, as "[t]he act, practice, or system of establishing or settling financial accounts; esp., the process of recording transactions in the financial records of a business and periodically extracting, sorting, and summarizing the recorded transactions to produce a set of financial records." BLACK'S LAW DICTIONARY 25 (11th ed. 2019). Webster's Third New International Dictionary defines "accounting" as "the system of classifying, recording, and summarizing business and financial transactions in books of account and analyzing, verifying, and reporting the results." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 13 (2002). Neither definition supports Fortin's narrow reading of "accounting records." Without authority to support its interpretation of former RCW 23B.16.020, Fortin's claim as to this aspect of the trial court's ruling fails on this basis.

Next, Fortin argues the fact that Herdson is the only shareholder who owns stock in XCar but not in the other Crossborder-owned companies is not in itself oppression. Fortin fails to tie this argument to any specific finding or conclusion by the trial court. Nowhere in the FFCL does the trial court find oppression based only on the fact that Herdson did not own stock in the other Crossborder-owned companies. Rather, it finds oppressive conduct based on Fortin's use of the other Crossborder-owned companies to funnel profits to only Fortin and Enslen, and on Fortin's failure to consider XCar's legal independence from the other Crossborder-owned companies. Fortin's challenges to the court's conclusion that it engaged in minority shareholder oppression against Herdson on this basis fails.

Fortin also alleges Herdson failed to submit evidence that XCar did not comply with relevant transfer pricing regulations. IRS "regulations require that arm's length prices be charged" for intercompany transactions. U.S. Tobacco Sales & Marketing Co., Inc. v. Dep't of Revenue, 96 Wn. App. 932, 942 n.17, 982 P.2d 652 (1999). "A price is arm's length if 'the results of the transaction are consistent with the results that would have been realized if [unaffiliated] taxpayers had engaged in the same transaction under the same circumstances.'" Id. (alteration in original) (quoting 26 C.F.R. § 1.482-1(b)). A taxpayer must conduct an analysis to provide "the most reliable measure of an arm's length result." 26 C.F.R. § 1.482-1(c).

The trial court found that Fortin "failed to ensure that XCar received fees commensurate with market rates for arms-length transactions." It also found that "[t]here was no credible evidence that showed how the transactions between XCar and Fortin's and Enslen's other companies were conducted at arms-length," and that Fortin "fail[ed] to follow rules regarding transfer pricing." The court largely relied on concessions from Nicholson that XCar had not done a transfer pricing analysis or any other review to determine whether its transactions were conducted at arm's length. The court also relied on Exhibit 8, an email from CPA Gary Traher to Nicholson, that explained what was required in a transfer pricing analysis. Nicholson conceded in his deposition and at trial that he understood the failure to do a transfer pricing analysis was "a risk concerning [XCar's] tax status in the United States." He also stated "it's important that we

- 14 -

have our documentation and methodology in place" in regard to transfer pricing analyses.

This testimony and exhibit are sufficient to support the trial court's findings that XCar failed to ensure it was conducting arm's-length transactions and complying with regulations for transfer pricing analyses. Fortin provides no authority for the contention that Herdson was required to submit particular evidence of what the prices should be—substantial evidence demonstrates that Fortin was required to conduct a transfer pricing study, and did not do so.

Substantial evidence supports the court's findings, which in turn support the court's conclusion that Herdson met his burden to prove minority shareholder oppression.

1. Types of Wrongful Acts That May Prove Oppression

Fortin next contends the court erred because Herdson alleged "generalized courses of conduct rather than identifying" specific interactions that were wrongful and/or contested. But Fortin again fails to provide any authority that suggests a plaintiff in a minority shareholder oppression claim must bring forth evidence of specific transactions rather than relying on wrongful "courses of conduct." Fortin's argument is directly contradicted by Scott, which relied on a statement by the Oregon Supreme Court that explained a single act breaching a fiduciary duty must be "'extremely serious in nature'" in order to constitute oppressive conduct. Scott, 148 Wn.2d at 716 (quoting Baker, 264 Or. at 630). In contrast, a plaintiff relying on a "'continuing course of oppressive conduct'" faces a lower bar of demonstrating the conduct results in "'a disproportionate loss to

- 15 -

the minority or that those in control of the corporation are so incorrigible that they can no longer be trusted to manage it fairly.'" Id. (internal quotation marks omitted). Thus, a course of conduct can properly serve as the basis for minority shareholder oppression.

Fortin next alleges Herdson did not prove illegal conduct. It argues that the findings "do not identify any actual illegal conduct and do not point with specificity to any act except possibly Defendants not listing Herdson . . . on XCar's PPP loan." Fortin contends that because Herdson identified no harm as a result of this arguably illegal act, it cannot serve as evidence of oppressive conduct. RCW 23B.14.300(2)(b) permits dissolution of a corporation if the majority shareholders "have acted, are acting, or will act in a manner that is illegal, oppressive or fraudulent." Here, the court found that Fortin and Enslen's conduct was "oppressive, fraudulent, and possibly illegal." This finding of fact is not challenged. The court also found that Fortin "intentionally misrepresented their [PPP] loan application which was done under penalty of perjury" "[b]y knowingly omitting information about Herdson's ownership." This finding is also not challenged. Unchallenged findings of fact are verities on appeal. Pierce v. Bill & Melinda Gates Foundation, 15 Wn. App. 2d 419, 429, 475 P.3d 1011 (2020).

Under the plain language of the statute, a plaintiff can succeed on a minority shareholder oppression claim by demonstrating "illegal, oppressive, or fraudulent" conduct. RCW 23B.14.300(2)(b). "'Or' is most commonly used in the disjunctive and employed to indicate an alternative." Black v. Nat'l Merit Ins. Co.,

No. 83701-0-I/17

154 Wn. App. 674, 688, 226 P.3d 175 (2010). Based on the plain language of the statute, a plaintiff may prove a minority shareholder oppression claim by demonstrating illegal conduct <u>or</u> oppressive conduct <u>or</u> fraudulent conduct. Here, the unchallenged findings of fact demonstrate that Fortin knowingly omitted information in a government loan application, made under penalty of perjury under 18 U.S.C. § 1001 and 15 U.S.C. § 645. This conclusion of law flows directly from the unchallenged findings.

### 2. Immunity Under the Business Judgment Rule

Fortin next argues that, "The trial court erred by finding Defendants' failed to justify every allocation of cost and expense across the group of companies, and by concluding Defendants' trial testimony regarding financial statements were not sufficient." It avers the court improperly shifted the burden to Fortin or, alternatively, that Fortin provided a reasonable explanation for its transactions and therefore the court's findings to the contrary are unsupported.

Once a plaintiff meets their "burden to prove oppressive conduct by a preponderance of the evidence," the burden then "'shifts to the majority shareholder . . . to show there were legitimate business justifications for the conduct.'" <u>Real Carriage Door</u>, 17 Wn. App. 2d at 459 (quoting <u>Scott</u>, 148 Wn.2d at 709). The defendant can avoid liability by demonstrating "'legitimate business justifications for the conduct,'" or that the "decision was reasonable and made in good faith." <u>Id.</u> at 462 (quoting <u>Scott</u>, 148 Wn.2d at 709).

Here, Fortin alleges the trial court improperly shifted the burden, and required it to justify business decisions, but that is exactly what the law required

- 17 -

No. 83701-0-I/18

after the court determined that Herdson had met his burden to show oppressive conduct. After finding Herdson had demonstrated oppression, the court then analyzed whether Fortin was "entitled to immunity under the business judgment rule."[9] The court found Fortin had not "exercised good faith," "proper care, skill, or diligence in the management or operation of XCar." These findings were largely rooted in the court's determinations that Fortin, Enslen, and Nicholson were not credible in their testimony. We do not disturb the trial court's credibility determinations, and the record establishes that there was substantial evidence to support the factual findings in this regard. The trial court did not err with regard to its application of the business judgment rule and conclusion that Fortin was not entitled to immunity.

> B.    Proof of Damages and Available Remedies

Fortin argues the court erred by finding minority shareholder oppression despite dismissing Herdson's separate claim for breach of fiduciary duty based on Herdson's failure to produce sufficient evidence as to damages. Fortin contends that damages are a necessary element of Herdson's minority shareholder oppression claim because they are a necessary element of a breach of fiduciary duty claim.[10] In reply, Fortin concedes that proving damages is not necessary in all minority shareholder oppression claims, but asserts that, in this

---

[9] "Under the 'business judgment rule,' corporate management is immunized from liability in a corporate transaction where (1) the decision to undertake the transaction is within the power of the corporation and the authority of management, and (2) there is a reasonable basis to indicate that the transaction was made in good faith." Scott, 148 Wn.2d at 709 (quoting Nursing Home Bldg. Corp. v. DeHart, 13 Wn. App. 489, 498, 535 P.2d 137 (1975)).

[10] The elements of a claim for breach of fiduciary duty are: (1) duty, (2) breach, (3) injury, and (4) proximate cause. Miller v. U.S. Bank of Wash., N.A., 72 Wn. App. 416, 426, 865 P.2d 536 (1994).

case, because the trial court's basis for finding minority shareholder oppression was a breach of fiduciary duties, a finding of damages was required. It contends that Herdson failed to identify a transaction or expert opinion demonstrating harm to XCar's profitability or to him as a shareholder.

Fortin overstates the extent to which the court's finding, that it engaged in minority shareholder oppression, rests on a claim of breach of fiduciary duty. Fortin is correct that oppressive conduct constituting minority shareholder oppression "is closely related to the fiduciary duty of good faith and fair dealing" owed by majority shareholders to minority shareholders. Scott, 148 Wn.2d at 711. However, a common law claim for breach of fiduciary duty is distinct from the statutory claim for minority shareholder oppression. The court appears to rely on the actions by Fortin that constitute a breach of fiduciary duty as evidence of oppressive conduct; this is proper under Scott. Id. at 716 ("'[A] single act in breach of such a fiduciary duty may not constitute such oppressive conduct as to authorize the dissolution of a corporation unless extremely serious in nature.'" (Alteration in original) (internal quotation marks omitted) (quoting Baker, 264 Or. at 630)).

Fortin further avers that Herdson did not specify any amounts or charges to which he objected and which caused "calculable harm." It concedes that Herdson "objected to certain areas of alleged mismanagement, including accounting costs, service fees, and lost profits" but faults Herdson for not specifying amounts related to this alleged misconduct. Fortin cites no authority

to support the contention that Herdson had this specific burden at trial;[11] in fact Fortin does not even allege that Herdson was required to do so. As the appellant, Fortin bears the burden to demonstrate the trial court erred and that the findings of fact are unsupported by substantial evidence. It fails to tie this allegation to any purported legal error or unsupported finding. As such, Fortin has failed to meet its burden as to this challenge.

Contrary to Fortin's assertion at oral argument before this court, Herdson did seek an equitable remedy under the statute.[12] This argument is further undercut by the plain language of Herdson's complaint, particularly items 6-8 in his prayer for relief, that explicitly ask the following of the trial court:

> 6. For an injunction prohibiting any transfer of assets from XCar to XCar Remarketing or any other third parties;
> 7. For an injunction requiring Defendants to return any assets improperly taken from XCar;
> 8. For an order requiring either a buy-back of Mr. Herdson's shares in XCar at a fair value or dissolution of XCar pursuant to RCW 23B.14.300.

(Emphasis added.) An injunction is an order to act (or refrain from acting). Garland v. Aleman Gonzalez, ___ U.S. ___, 142 S. Ct. 2057, 2063-64, 213 L. Ed. 2d 102 (2022). Each of these remedies in the prayer for relief is injunctive in nature. To put a finer point on it, item 8 expressly seeks judicial dissolution of XCar as an alternate remedy available to the court under the statute.

Our State Supreme Court was clear in Scott that "[d]issolution suits under Washington's dissolution statute are fundamentally equitable in nature." 148

---

[11] At oral argument, Fortin asserted that Interlake Porsche & Audi, Inc. v. Bucholz, 45 Wn. App. 502, 728 P.2d 597 (1986) controls here and requires a plaintiff to make such a showing. Wash. Court of Appeals oral argument, supra, at 8 min., 4 sec.

[12] Wash. Court of Appeals oral argument, supra, at 9 min., 47 sec.

Wn.2d at 716. <u>Scott</u> quoted from a summary of equitable remedies available in such suits, as set out in <u>Baker</u>, but qualified that it listed only those remedies "most relevant" to the facts of the case before it. 148 Wn.2d at 717 (quoting <u>Baker</u>, 264 Or. at 632-33). The full list in <u>Baker</u> additionally includes "[t]he ordering of affirmative relief by the required declaration of a dividend or a reduction and distribution of capital," and "entry of an order requiring the corporation or a majority of its stockholders to purchase the stock of the minority stockholders." 264 Or. at 633. Herdson sought "an order requiring either a buy-back of Mr. Herdson's shares in XCar at a fair value or dissolution of XCar pursuant to RCW 23B.14.300." Herdson presented expert testimony from certified public accountant (CPA) Laura Lee White who conducted a valuation of Herdson's interest in XCar. She ultimately valued Herdson's shares at $4.23 million at the time of trial. The court further found that "Herdson has established a probable right in the XCar profits" that "have been taken by the Defendants, which has materially impaired Herdson's rights to his portion of such profits." This was sufficient evidence to support the relief requested.

Fortin provides no authority for its contention that utilizing the act of breach of a fiduciary duty as evidence of oppressive conduct imposes all elements of a common law fiduciary duty claim into the statutory claim of minority shareholder oppression.[13] Further, Herdson met his burden to demonstrate entitlement to an equitable remedy under the statute based on his showing of minority shareholder oppression. As such, the court did not err.

---

[13] "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." <u>DeHeer v. Seattle Post-Intelligencer</u>, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

IV.     Post-Trial Order Appointing Special Fiscal Agent in Lieu of Receivership

Fortin filed an amended notice of appeal in order to include the trial court's order that appointed special fiscal agents and a forensic auditor, asserting such action is contrary to law. It alleges the court is improperly permitting a "second bite at the apple" for Herdson to demonstrate damages after failing to do so during trial. It also contends the trial court "will not permit Defendants to challenge any findings" from the forensic audit.[14] Finally, it argues Herdson cannot benefit from an equitable remedy under the unclean hands doctrine.[15] This court reviews "the fashioning of equitable remedies for an abuse of discretion," while "'the question of whether equitable relief is appropriate is a question of law'" and therefore reviewed de novo. Borton & Sons, Inc. v. Burbank Props., LLC, 196 Wn.2d 199, 206, 471 P.3d 871 (2020) (quoting Niemann v. Vaughn Cmty. Church, 154 Wn.2d 365, 374, 113 P.3d 463 (2005)).

Here, the trial court appointed a receiver in the FFCL issued after the conclusion of trial. This is a remedy plainly permitted under Scott. 148 Wn.2d at 717 (quoting Baker, 264 Or. at 632-33). However, when the court changed course,[16] it abandoned the order appointing a receiver and instead appointed

---

[14] Fortin also assigns error to the trial court's later decision to appoint a special master to manage the receivership. This order is not designated in the Notice of Appeal at issue here and is the subject of the subsequent case before this court (No. 84800-3-I) that is pending a ruling on discretionary review. As such, we disregard Fortin's numerous arguments about the order.

[15] We likewise decline to reach Fortin's argument regarding unclean hands. "Unclean hands" is an equitable defense. Crafts v. Pitts, 161 Wn.2d 16, 24 n.4, 162 P.3d 382 (2007). Fortin brought forward no evidence regarding unclean hands during trial, simply arguing once in closing that "Mr. Herdson does not have clean hands." This is not sufficient to raise the defense, much less preserve the issue for appeal. Accordingly, the argument is waived.

[16] This panel finds it noteworthy that while Fortin filed an amended notice of appeal to include this order, and assigned error in briefing, the challenged order was originally entered at Fortin's request. At oral argument before the trial court, Fortin contended that appointing the

- 22 -

special fiscal agents "in lieu of appointing a traditional receiver." The court lacked authority to do so. Once this court accepts review of a decision, a trial court may only modify that decision after receiving permission from this court. See RAP 7.2(e).

The record establishes that no party brought a motion seeking permission from this court. Fortin timely appealed the court's FFCL on February 11, and a perfection letter was issued by the clerk of this court on February 18. The trial court issued an order appointing special fiscal agents on February 25, after review was accepted by this court. Where an order is entered in violation of RAP 7.2, the order is voidable. See State v. Edwards, 23 Wn. App. 2d 118, 121-22, 514 P.3d 692 (2022) (citing Tinsley v. Monson & Sons Cattle Co., 2 Wn. App. 675, 677, 472 P.2d 546 (1970)).

While the court generally enjoys broad discretion as to the fashioning of equitable remedies, and the manner by which those remedies are identified, that discretion is not without procedural limitations when an appeal has been initiated and accepted. Accordingly, we do not reach the propriety of the choice to appoint special fiscal agents and a financial auditor over a receiver, but rather conclude that the order before us is void based on the failure to comply with RAP 7.2.[17]

Because the court lacked authority to enter the February 25 order, we reverse on this issue. We further note that our authority in this case terminates

accounting firm Ernst & Young in lieu of a traditional receiver would allow the company to continue operating while still providing financial transparency.

[17] This issue was not raised in the parties' briefing. Prior to oral argument, they submitted supplemental briefing on the applicability of RAP 7.2 to the February 25 order at the direction of the panel.

upon issuance of the mandate. At that point, the trial court has the authority to order a remedy it deems equitable based on the record before it.

V.     Trial Court Management of Proceedings and Due Process

As a final assignment of error, Fortin claims the trial court violated its constitutional right to due process by imposing a strict trial schedule limiting the number of witnesses. While it is true that parties to litigation are entitled to due process, it is also true that trial courts enjoy significant discretion as to the management of proceedings. In re Marriage of Zigler, 154 Wn. App. 803, 815, 226 P.3d 202 (2010).

Fortin fails to provide any legal authority at all in the two paragraphs of its opening brief dedicated to this assignment of error. It does not identify the appropriate constitutional test for us to apply, or suggest a remedy should we agree with this challenge. Further, Fortin does not even argue, much less demonstrate, how its case was prejudiced by the judge's management of proceedings, describe what evidence it was prevented from introducing, or note any offers of proof it made to the trial court. Ultimately, Fortin offers nothing more than "naked castings into the constitutional sea." In re Rosier, 105 Wn.2d 606, 616, 717 P.2d 1353 (1986) (quoting United States v Phillips, 433 F.2d 1364, 1366 (8th Cir. 1970)). Without more, we decline to reach this issue.

VI.     Conclusion

The court's findings after trial are supported by substantial evidence, or are credibility determinations that will not be disturbed on appeal, and its

No. 83701-0-I/25

conclusions of law logically flow from the findings. The court did not err by pursuing an equitable remedy short of judicial dissolution after concluding Fortin engaged in minority shareholder oppression. However, because it lacked authority to enter the February 25 order, we reverse on that sole issue.

Affirmed in part, reversed in part, and remanded.[18]

Hale, ACJ

WE CONCUR:

Coburn, J.          Dwyer, J.

---

[18] On March 7, 2023, Fortin filed a supplemental designation of Clerk's Papers. On March 8, Herdson filed a motion to strike it. The motion is rendered moot by the issuance of this opinion and is denied.

On February 27, 2023, Fortin moved to modify the January 26, 2023 ruling by a Commissioner of this court that denied its second motion for an emergency stay. Herdson filed an answer in opposition to the motion to modify on March 15. Fortin filed a reply on March 20. The motion to modify is denied.